Chief Justice Robertson
delivered the Opinion of the Court
The appellants seek the reversal of a judgment in ejectment obtained against them, upon a declaration containing two counts — one on the demise of Ann T. Sanders, the other on that of Thomas Sanders, Taliaferro Sanders, Walker Sanders and Ann T. Sanders.
All the grounds relied on here by the appellants, may be resolved into one general proposition — did the circuit court err in overruling a motion for a new trial, made by the appellants, on the following grounds ? — 1st. The verdict is contrary to the evidence. 2nd. The court erred in giving instructions for the appellee; in withholding an instruction proposed by the appellants; and in rejecting documentary and other testimony. 3rd. Surprise.
The points thus presented will be severally, but briefly considered, in the order in which they have been suggested.
I- This court cannot decide that the verdict was contrary to, or unauthorized by the proof: 1st. because the bill of exceptions does not profess to exhibit all the facts which were submitted to the jury; and 2nd. because the facts, as disclosed by the record, are sufficient to sustain the verdict. As a matter of fact, a title sufficient to sustain the verdict was indisputably established : no adversary title was exhibited, except for an inconsiderable portion of the land in controversy, and that title was junior to the patent to Robert Sanders, from which the appellee deduced his paramount right. The lapse of time cannot protect any of the appellants; no one ot them, except John Norton, attempted to connect himself *15 with any title whatever, or attempted to. prove an adverse possession of twenty years; and as to Norton, notwithstanding his effort to shelter himself under the cover of time, the jury had a right to find against him for several reasons, only one of which will be now mentioned, and that is, because the jury had a right to infer that he entered under the tenant of Robert Sanders, on whose title the plaintiff relies for maintaining his superior right to the possession.
The acquisition °fthe il tenant,^ ill not 5a“onyb*ween him and his land Tannot question with- ^
Instructions of ^^e^errone1 ous, but ab-Xlreforo not cause for a lev01sa-
It is true that an abortive attempt was made to prove by insufficient testimony, that the tenant from whom Norton obtained the possession had previously bought a claim ad-verse to that of Sanders, his landlord. But neither such a purchase, had it been established, nor the subsequent conveyance from Sneed to Norton, in 1815, of a part of Searcy’s adversary claim, would, perse, destroy the pre-existing legal relation and obligation of a tenancy under Sanders ; for though the tenant of Sanders may have held adversely to his (the tenant’s) vendor, after a conveyance, and though the s,ub-tenant (Norton,) may have held adversely to Searcy after the execution of Sneed’s deed, yet, surely, neither of them did, or could, in contemplation of law, hold adversely to Sanders, in consequence merely of purchases from strangers to him and to his title. Nor would the law permit either of them to question the title of Sanders until after a restitution of the possession.
II. No specific objection has been made in this court, to any of the instructions which the circuit court, at the instance of the appellee, gave to the jury ; nor can any, which is even plausible, be perceived, unless it lie in this —that, in two of the instructions, the jury was, in effect, told that a former judgment in ejectment, obtained jn 1822, by the heirs of Robert Sanders, for the land now in controversy, and the execution of a habere facias, which was issued to enforce it, so far concluded such of the appellants as were parties to that judgment and such others of them as held under parties thereto, as to preclude them from relying on the duration of their possession prior to that judgment, or on any title which they may, at the time, have held.
After a judgment in ejectment, the deft, buys the land at a sale by the sheriff, under an ex’on against the pl’tf: Sf then agrees (for a con sideration,) to release it to the plaintiff, abandons the possession, and, sometime after, makes the deed. In the mean time, a stranger enters- by what right, it does not appear. — Held that his possession was thepos session of the plaintiff— not of the defendant and those claiming under him.
There is evidently some error in this proposition. But the error was abstract and harmless.
The instructions could not have been injurious to any 0* ^ie appellants who had failed to exhibit any document of title or any proof which would have allowed the application of any statute of limitations; and this suggestion seems to be applicable to all of them, except John Norton. He has no just cause for complaint.
The judgment of 1822, was obtained against several persons; but on two of them (Hume and Ruddle,) the habere facias was never executed. Hume is no party in this suit, and there is no proof that any of the appellants hold under him. Norton now occupies the place which Ruddle held when the judgment of 1832 was rendered against him ; and consequently if he had, by proof, so connected himself with Ruddle as to have shewn an unbroken continuity of possession, he might, with some semblance of justice, have complained that he was not permitted to rely on any title or possession prior to the judgment of 1822. Though, even according to this hypothesis, it does not appear to us that lapse of time could have protected him; or that his junior claim could have availed against the elder grant. But the hypothetical case is not this case.
A fieri facias, which had been issued on a bond by Sanders’ heirs to Ruddle, for his improvements, was levied on their entire tract of land (embracing the land in contest in this suit,) and Ruddle having become the purchaser, under that execution, of one thousand acres (the same which constitute the whole subject matter of this suit,) a conveyance was made to him by tlie sheriff in 1823. A tribunal, called the new court of appeals, having quashed Ruddle’s purchase, he covenanted, in 1826, in consideration of an equivalent for his improvements, to convey his title to Robert Sanders’ heirs ; and shortly afterwards surrendered or abandoned the possession. in April, 1829, he made the conveyance to Ann T. Sanders, pursuant to the request of her co-heirs ; but, in tbe mean time, by some means not disclosed, John Norton had obtained the possession of the house which had been occupied by Ruddle, and which he (Norton,) *17 now occupies. Under these circumstances, it is the opinion of tisis court, that Ruddle’s possession, prior to his conveyance to Ann T. Sanders, cannot be deemed the possession of Norton, or to have been legally continued by Norton ; but that it should be deemed the possession of Ann T. Sanders, and should inure to her benefit. Consequently, as Norton’s possession could not have been protected by lapse of time, nothing in the instructions as given, could have been prejudicial to his rights. We will not, therefore, reverse for any abstract error in those instructions.
A deed made to carry into effect a contract for the sale of land, of which there was no adversary possession at the time the contract was en tered into, is not tainted with champerty, although the land he held adversely, when the deed is made!
II. The instruction which the circuit court refused to give, declared in effect, that, if the appellants were in the adverse possession of the land “at the date of the deed ” from Ruddle to Ann T. Sanders, and of another deed to her from i.'ir co-heirs, for the same land, those deeds were void.
This instruction was properly withheld. The deed from Ruddle was made pursuant to the executory agreement of 1826. As there is no proof or intimation to the contrary, the conveyance must be presumed to have been bona fide, and in execution of the prior contract, which also seems to have been fair and legal. Consequently, according to the principles ruled in the case of Sanders’ Heirs vs. Groves, (2nd J. J. Mar. 406,) and which wo still approve, the deed was not infected with champerty, even though the possession of the appellants may have been adverse to Ruddle at the date of the conveyance.
. The same principles apply to the deed from her coheirs to Ann f. Sanders. By her father’s will, she was entitled to one thousand acres (by election,) out of any of his tracts of land Which he did not specifically devise. The tract including the land how in contest in this suit was not specifically devised.' Some years prior to the dale of the deed from her co-heirs, Ann T. Sanders had elected, with their concurrence, to take the identical thousand acres afterwards conveyed to her by that deed, in confirmation of her right under the will: consequently, that deed does not seem to be invalidated by any law in 'force against champerty; of course it does riot become necessary now to decide whether, if the act of 1824 had'applied to the *18 conveyances, the title-of the conveyors (in whose names there was a demise,) would have been forfeited to the Commonwealth, or in any way affected.
Evidence rejected in the circuit court.
Copies óf patents not duly authenticated— not shewn to include the land-, were prpporly rejected.
Witness -tat" that he is interested, for some ol those consci-tuting the party. offered^is^iot competent.
Ifa witness says for13 some681 of the defendants, those whoosh to^ avail them-testimony,must shew that their defence is unconnected with defendants1 and ihe witness not •ihemeStel WÍth
IV. The .circuit court refused to admit certain documents offered by the appellants, as copies of patents to Harris and Crittenden ; refused to permit the appellants to examine William Rout as a witness in chief, and refused also to permit an’ametided return on a writ of restitution to be read to the jury ;-^-and of all this the appellants now Complain. But we perceive no error in any of these decisions of the circuit judge.
1st.' There was no- sufficient evidence of the authenticity of the copies; nor was it even intimated that the appellants could have shewn by competent testimony, that either of the patents included any part of the land in contest.
2nd. Rout was offered as a witness to prove the handwriting of subscribing witnesses to a power of attorney, and stated', on his Voir doir, that he was interested ‘‘for some” of the appellants, without designating those for' Whom he was interested.
'-^vs the witness was offered, without discrimination', for the party defendant, now appellant, and acknowledged that jie was not competent as a witness for all of the persons ■* * constituting that party, he was properly rejected. ¿Is offere^ be was n°t competent: If,he had been- competent for any one of the persons defending, that person should have claimed the benefit of his testimony, and might have been entitled to the benefit .of it, by shewing that his defence was unconnected with that of others in wh ose "behalf the witness was interested, and by shewing also that the witness was competent for him! ■ Such a state of case may' have existed ; though there is nothing in the record which would create a presumption that it did ex- . . , , , ■ , , . , . .. , , ist, or that would have enabled the circuit judge to.have c^ec‘(led that Rout was competent for any' particular individual of all those who were defendants. Neither the Pertiriency nor the effect of his testimony can be perceived. But if any inference should be indulged, the only probable conjecture reconcilable with the legal application of his evidence to the case, in ariy manner or de~ *19 gree, is, that tlie party intended to shew some settlement upon, or derivation of some right, (under the power) to, land included by [larris’ patent for forty four thousand one hundíed and nine and one-foürth acres, and also to prove that the land, or some portion of the land in contest, was included within that patent. Even had this been the object, Rout’s testimony would have been ineffectual, because the patent had been excluded. If the object bad been to prove an adverse possession, the proof of tiiat fact wouid have been equally unavailing, because whether it was adverse or amicable, the statute of limitations could not have applied to any person who could have been embraced by Harris’ grant, in relerence to waich the rejected power was given. We cannot, therefore, consider the rejection of Rout as sufficient cause for reversal.
Testimony that can have no legal effect,should not be admitted, nor used to counteract the effect of other illegal evidence..
Affidavit of suiy prise — held insufficient.
3rd. The rejected return on the writ of restitution could have no legitimate effect on the case, even if it had been admitted. The court had improperly, as we think, permitted the writ, with its original return, to be read to the jury. The rejected document was an amended, return. The circuit judge did not err in rejecting it; because, 1st. it was not proper to correct or counteract one error by committing another; 2nd. the amendment did not change the legal effect of the original. Besides, it did not relate to John Norton, and, as already stated, the other appellants could not have been benefitted by shewing that, as to them, there had been no eviction by the' writ of restitution, even if the amended return thereon could have shewn that fact, because, nevertheless, time could not have protected them ; and they neither proved, nor pretended to hold, any title.
V. After the trial, one of the appellants made affidavit, that he had, as agent of his co-defendants, defended the suit ; that he was surprised by the rejection of Rout’s testimony, and by the rejection of the patents, and of the amended return on the writ of restitution; and he also swore that he covdd have proved by Rout the boundary-of Harris’ patent for forty four thousand one hundred nine and one-fourth acres.
*20 This affidavit will, when scrutinized, be seen to be wholly insufficient; and therefore, it has not been even mentioned in the argument of this case.
- 1st. It is not stated that Rout, or even any other person, could have proved that Harris’ patent covers an inch of the ground for which the appellee has obtained a judgment.
2nd. There was no reasonable cause for surprise at the rejection of Rout; and when he was rejected he was offered for a single purpose only, and that was to prove the execution of a power of attorney. He was not offered to prove the boundary of the patent.
If he had been properly offered for that purpose, and had sworn that lie was competen t as a witness for. any one of the appellants, doubtless, he would not have been rejected in consequence of interest.
3rd. As to the rejection of the. amended return, enough has been already said to shew that no surprise in that particular could authorize a new trial.
Wherefore, the judgment of the circuit court must be affirmed..