Chief Justice Robertson
delivered the Opinion of the Court.
James Hamilton, claiming in right of his wife — to whom, prior to their intermarriage, a tract of land and a slave named Dick and other slaves had been allotted for her dower in her former husband’s estate — sued James P. Rucker, in detinue, for Dick, and, on the general issue, obtained a verdict and judgment.
Rucker resisted the action on two grounds: to-wit. First — that, in virtue of an alleged contract with Mrs. Hamilton, during her widowhood, he was entitled to Dick as long as she should live; and, second — that he had not been in the possession of Dick, or ever detained him.
The chief matter of controversy, and that respecting which nearly all the efforts of each party seem to have *37 been made, was whether, by the contract between Mrs. Hamilton and Rucker, he was entitled to Dick during her life, as he attempted to prove, or only for a term of five years, as Hamilton, by his testimony, endeavored to show.
Evidence.
An agreement of the same parties, in a former suit, read from the record.
It appears from the concurrent evidence on both sides, that, at the time of Mrs. Hamilton’s last marriage, Ruck-er claimed, under some unexplained contract, a tract of land and some slaves which had been allotted to her for her dower. That Hamilton, in 1824, after his marriage, being dissatisfied with Rucker’s claim, procured a rescission of the agreement on which it was asserted, and the substitution of a new agreement, in writing, which transferred to Rucker the dower land and Dick; and that the memorial of this last contract was, only a few months after its date, destroyed by the consent of both parties.
There is some evidence tending to show, that, at the date of the contract for Dick and the land, one Amed Rucker held Dick, as a pledge for money which he had loaned to Mrs. Hamilton prior to her last marriage; and there is some testimony also tending to prove that James P. Rucker, when he made the contract of 1824 with Hamilton, undertook, with the approbation of Amed, to pay to him the amount for which Dick was pledged; that Amed continued to hold Dick, under James P. as a collateral security, and was in the possession of him at the commencement of this suit — which was after the expiration of five years from the date of the contract of 1824, and that, after the destruction of the written evidence of that contract, James P. Rucker had leased out the land for some years.
The following extract from the record of a suit between these parties, compromised in 1828, was also read to the jury on the trial: — “It is agreed, that the con- “ tracts supposed to have been made between James P. “ Rucker and James Hamilton, in which Hamilton was 44 to have let Rucker have the dower-negroes and other “ property (except negro Dick and the dower-land,) in 44 consideration that said Rucker was to pay all the debts 44 of his (Hainilton’s) wife &c. shall be considered null and 44 void upon the following terms” — 44 this arrrangement *38 “ shall not affect the previous bargain about the dower- “ land and Dick.” • •
Evidence of a deceased witness in a former suit between the same parties ,read fro m the record, and proved.
Objections to the above evidence, and—
Authority in support of the objections examined.
Proof of what a deceased witDmerUiaf isad missible, where is^n^issue — between the same oath was legal,
On the trial, the Circuit Court permitted the appellee to read to the jury so much of the record of an ejectment between the present parties, as contained the testimony of Samuel Blair, oft the trial of the ejectment; and also permitted him to prove by a witness, that Blair, who was then dead, had testified in the action of ejectment for the dower land, substantially as the recordj as read, represented.
The admissibility of that evidence is the first question presented for our consideration.
The appellant’s counsel insists, that the evidence was inadmissible for two principal reasons: first — because the verdict in the action of ejectment would not have been admissible as evidence in this case; second — because, as he contends, the same matter was not involved in the issue in the ejectment, and in this case.
The only authority relied on in support of the first reason, is a dictum in Starkie — (1st vol. 266;) and that dictum is not sustained by the only reason assigned in support of it: which is, that the oath cannot be “ given “in evidence without first giving the verdict in evi- “ dence; for otherwise it would not appear that the oath “ was more than a voluntary affidavitA palpable non sequitur is here announced, by Mr. Starkie, as a sufficient foundation and the only basis of an unreasonable doctrine. And cases referred, to in the notes to the same page on which that announcement is made, show that it is sufficient that the postea be given in evidence, and also that, after a new trial has been granted, though the verdict would not be admissible evidence on. the next trial, nevertheless, if a witness who testified on the-former trial be dead, what he swore on that trial, may. be Pr0Ved- '
. All .that is necessary to authorize such evidence, is, first — that Parties are the same5 second — that the same matter is in issue; and tldrd — that there was sucha trial as authorized the administration of a binding oath, ]\/[r> Starkie himself virtually admits that, as to the oath, it is omy necessary to show, that it was not voluntary. *39 Cannot that be shown without reading a verdict? think it can. We
One question involved in a pend-ms tlia'> being the same as one involved in the ent action, be-p™et;eS*proofis clearly admissiceased^wftnessj whosetestimony ^t single question> swore t0.’ X And—
Even, when the testimony o f the deceased witness was not confined to the matter in issue on the now pending trial, but also relates to, and is inseparably connected with, other facts, the whole may be admitted — provided the irrelevant portion is not such as may prejudice the adverse party (postp. 41.) But the court should instruct the jury as to what part is material, and to be considered by them, and what they are to disregard.
But the second reason urged by the appellant’s counsel, is more formidable. Yet, specious and imposing as it may seem to be, we are inclined to think that it is inconclusive.
The reason- for the second requisite before suggested, , . . , . 7 77 r 7 ... , , . that is, that “ the issue shall be the same, is plain and irresistible. A party is not bound to disprove what a witness, states out of the issue; he is not presumed to be prepared to repel it; it is not necessary that he should ■ cross-examine respecting it, or that he should notice it at all, on the trial, or in a bill of exceptions.
The title to the land was the matter in issue in the ejectment, and the right to the slave was the chief matter involved in the issue in this case. These are certainly different things. But the contract of 1824, in virtue of which the appellant claimed the land, and seems to have claimed the slave, was material to the issue in each case. Blair’s testimony applied altogether to that contract. And it seems that the chief matter in controversy on the trial on both issues, was, not what property the contract of 1824 embraced, but whether it entitled the appellant to hold that property for five years only, as the appellee contends, or during Mrs. Hamilton’s life, as the appellant has endeavored to prove. As to that material and controverted question of fact then, the matter in isspe in both suits was precisely the same; and therefore, had Blair testified only as to the period of enjoyment fixed by the contract, the admissibility of the proof of what he stated on the trial of the ejectment, could not be doubted.
But the isolated question, whether the contract embraced Dick as well as the land, and for the same term, was not material on the trial of the ejectment, and therefore it is contended, that the appellant could have had no motive for controverting or disproving, on that trial, what Blair said as to Dick; and consequently that what he stated respecting Dick, was not admissible as evi *40 ¿ence jn this case. The contract, however, being an entirety, Blair could not have proved or identified it without describing its terms and all its essential contents; and the object of his testimony was only to establish, and consequently identify, that contract.
But, admitting that what he stated respecting Dick was irrelevant to the issue to be tried on the action of ejectment, the necessary consequence of the concession would not be, that the Circuit Judge erred, to the appellant’s prejudice, in permitting the proof of all that the deceased witness had sworn about the terms of the contract. For not only was it impossible to prove the contract, so as to make the proof available on the trial of the ejectment, without describing and repeating all its essential stipulations, but it Would have been also impossible to extract from Blair’s testimony, and present intelligibly or availably to the jury on the trial in this case, only what he had stated as to the time during which the appellant was to keep the property transferred to him by the contract. Then it was the duty of the Circuit Court, either to admit the proof of Blair’s entire testimony, as was done, or to reject it altogether; and what he said as to the time fixed for enjoyment being evidently material, and, by itself, admissible evidence, we cannot admit that the appellant should have been denied the benefit of Blair’s testimony as to that fact, tnerely because, in speaking about it, he incidentally and unavoidably mentioned another fact.
The Judge might have told the jury, that Blair’s testimony was no proof that the contract of 1824 included Dick. But no such instruction was asked for, and the appellant’s own evidence, subsequently introduced, showed indisputably, that there was Ho dispute about the terms of that contract, excepting only as to whether he was entitled to Dick and the laúd, for Mrs. Harm ilton’s lifetime, or for only five years — a question respecting which Blair’s testimony was undoubtedly competent in this case. It appears, therefore, that the admission of proof as to other matters incidentally stated by Blair, was not, even if erroneous, prejudicial to the appellant, or inconsistent with a fair and just trial of all *41 that was controverted so far as the contract of 1824 was concerned.
Error, in admitting irrelevant testimony, may be cured by the introduction of testimony on the other side, making a state of case in which it becomes proper. And if a def’t moves for a non-suit, and his motion is improperly overruled, and he himself then introduces evidence conducing to prove a cause of action for his adversary, it will jon-?6 erior'—
where a verdiet is right upon L^tcmd when Í11? iury retired, it is not material ¡n what order, or hr which party, denee was introtriafwilTbegran^ ted because evidence, not in proper time, or not admissible in the then state of case, was received, if the error was cured by further proof in the progress of the trial.
It is undeniably proved by the appellant’s own evidence, and seems not to have been controverted, that the contract of 1824 embraced Dick and the land, and that it vested the right to each for precisely the same time, whatever that time, as to either, may have been; and therefore, as Blair’s testimony respecting the period of enjoyment fixed by the contract, was admissible without doubt — because, that matter was involved in both issues — the appellant should not complain of its introduction, merely because it referred to another circumstance, which — even if it were not in issue on the trial of the ejectment — has never been denied or controverted by him, and was clearly proved by his own evidence, at his own instance, on the trial in this case.
It is true that, had the Circuit Judge told the jury, when the proof of Blair’s testimony was admitted, that nothing which he said about Dick was evidence before them, there might have been some ground for a nonsuit, and the appellant might not have deemed any evidence on his part necessary. And it may be admitted also, that, when a motion to instruct as in case of a nonsuit was made, the instruction might, perhaps without error, have been given. But, as the Court, in refusing to give the instruction, only left the whole case to the jury; if the evidence before them, when they retired to consider the case, was sufficient to authorize the verdict, this court should not award a new trial. Thomas and Wife vs. Tanner, 6 Mon. 61.
The appellant could not claim a new trial merely because (if such was the case) the verdict was sustained by his own evidence, which an erroneous decision by the Judge on the trial induced him to introduce.
If, according to all the evidence before the iurv, jus- , . , . . . . . J J tice has been done, it is not material, on a motion tor a new trial, why or by whom essential facts were proved. After Blair’s testimony had been heard, and after the court had overruled a motion for a nonsuit, the appel *42 lant, instead of resting there, as he might have done, chose to introduce evidence of facts which conduced to sustain the appellee’s right, and which clearly showed that the admission of Blair’s testimony, without qualification or instruction by the Court, was, in no degree whatever, prejudicial. Then, as there can be no doubt that, in one respect at least, the testimony of Blair was admissible, the circumstance, that, in another uncontroverted particular, it was inadmissible, would be insufficient to prove that the appellant has been prejudiced, or is entitled to a new trial. Had his evidence been introduced before the proof as to Blair’s testimony was offered, the only objection to the admissibility of that testimony, would have been removed. For then, as it would have appeared, as it now does, that the only controversy between the parties respecting the contract of 1824, was, not whether it included Dick, as well as the land, and for the same length of time, but only whether that time was five years, or the life of Mrs. Hamilton, there could have been no solid objection to the proof of all that he had said about the contract.
Blair’s testimony as to time being admissible, and every thing else which he incidentally stated being undisputed, there could have been no reasonable objection to letting the jury hear all that he had said, because what he said in addition to his statement as to the term fixed by the contract, could not have had any influence on the only controverted question arising on that contract. And it seems to us, that the mere order observed in giving the evidence should not have any material influence now. If the testimony of Blair was irrelevant or inadmissible in any particular, when it was offered, nevertheless, as the subsequent evidence of the appellant removed the only objection to it, the error in admitting it without restriction, afterwards shown to be unnecessary, should not now entitle the appellant to a new trial. Nor ought this Court, on that ground, alone, to reverse the judgment, if the evidence, as the jury had it, authorized their verdict. The appellant having himself proved that Dick and the land were both included in the same contract, and were to be held for the same time, it is *43 evident that what Blair had sworn on the trial of the ejectment, as to the time stipulated for holding the land, was, so far as the contract respecting Dick was material in this case, altogether relevant and very important; for admitting — as was proved beyond controversy or doubt by the appellant himself — that the land and Dick were both included and were to be held for the same time, it is clear that any evidence tending to prove that the term for which the land was transferred was five years only, would necessarily tend, in an equal degree, to show that Dick was to be held for only five years. Then, if it be admitted that, at the time Blair's testimony was offered, what he had said in relation to Dick was incompetent as evidence, yet, as the facts exhibited by the whole record, show that there was no controversy as to that matter, and that, therefore, the appellant was not prejudiced, we will not decide that there was any essential or injurious error in admitting Blair’s testimony first, instead of last, in the order observed on the trial.
An agreement-was made, in writing; which writing was soon after destroyed by consent of bothparties (ante p. 37:) an extract of a record conducing to prove that they considered, the agreement, still in force, held to be admissible; as evidence, on. the trial of another case between them.
Where divers im en^whkMaken together,statehy potheticaliy, every material fact, the whole may be sustained,tho > m some, considered seperately, mfoiííiSonVof hypotheses.
Nor did the Circuit Judge err in permitting the foregoing extract from the record to be read. There were some circumstances tending, in some degree, to show that, though the memorial of the contract of 1824 had been destroyed, the agreement itself had, either never been in fact cancelled, or had been revived by some substituted arrangement, in 1824 or afterwards, by the compromise made in 1828. The extract from the record was read for the purpose of fortifying that deduction; and as, in our opinion, it might, to some extent, if not conclusively, have had that effect, we cannot disapprove its admission as evidence.
The only remaining question is, whether the Circuit Court erred in overruling a motion for a new trial.
The grounds relied on for a new trial, are, first — that the Circuit Court gave erroneous instructions to the . ° . jury; and, second — that the evidence did not authorize the verdict.
. ^ The instructions aré various, and will not be noticed in detail. In more than one of them there is an omission of some hypothetical fact which might have been *44 fatal to each one to which that objection could be made. But all such defects are remedied by virtual concessions in some other instruction, as to the necessity of the omitted fact; so that, taken all together, they contain every hypothesis which the facts or law of the case required; and, thus considered, no one of them could have misled the jury.
The action of detinue was originally of two kinds —ex contractu, upon a bailment, and ex delicto, for a tortious detention. The modern form of declaration will apply to either, and the latter is nowchiefiyused. Counts in detinue ex contractu and debt may be joined.
Against a bailee,, detinue may be' maintained tho’ he had parted with the posession before suit brought — unless he lost it by casualty, or by lawful eviction.' —The action for' a tortious detention will not lie, unless the df’t has been in possession without right, when the plaintiff had right.
To some of them, however, two general objections have been urged in argument: first — that they imply that the appellant was liable, even though he had never been in the actual possession of the slave; and, second — • that, in stating that if the appellant had been entitled to Dick for five years and no more, under a contract with Hamilton, and had, during that time, been in possession, or had hired, or otherwise bailed him, the appellee had a right to recover, — the Circuit Judge had erroneously assumed for law that which is not law applicable to this case.
To each objection there is one answer; and that is— this action is brought for the breach of a contract of bailment.
Had this been the ordinary action of detinue for a tortious detention, both objections would have been imposing, and the last, at least, would have been unanswerable. In an action for such a detention, a defendant is not liable, unless he had been in possession, and at a time when he had no right, and when tire plaintiff had right.
In this case the instructions hypothetically assumed, that the appellant had, in virtue of a contract with the appellee, acquired the actual possession of Dick, or at least dominion and constructive possession, and that Amed Rucker held under his right and subject to his authority; and therefore they announced to the jury that, in such a state of case, he was liable in this form of action if he failed to restore the slave at the expiration of the term of bailment. And such we understand to be the law.
The action of detinue was originally nothing but debt in the detinet, or detinue on a bailment. It is in such a form that a count in detinue may be joined with a money count for debt; and it is in such form also, that detinue is an action esc contractu.
*45 Detinue ex delicto is of more modern origin, though now it is the more common form of action. The form of the action is not, however, material to the point we are now considering; it is the character of the detention, that is, whether tortious, or only in violation of a contract — that is important. The modern form ex delicto will apply to either kind of detention.
As the object of detinue against a bailee, is to recover the specific thing bailed, and enforce a specific execution of the contract of bailment, the fact that the bailee had wrongfully parted with the possession before the impetration of the writ, should not, per se, defeat the action. Neither justice nor analogy should suffer such an evasion of law and frustration of contract.
In reference to the action of detinue against a bailee, Chitty says — “ if he wrongfully deliver the goods to another, “ he will continue liable,” and he refers to several authorities. 1 Chitty on PI. (6th Jlmer. Ed.) 141.
A wrongful delivery by a bailee, is any delivery to another in violation of his contract, or in consequence of which he cannot make specific restitution to the bailor. He is, of course, liable if he authorize or permit another to possess and detain the thing bailed. And the bailor may always maintain detinue against his bailee, for not restoring the thing bailed, unless he shall have lost it by casualty or lawful eviction.
If then the appellant had bought Dick from the appellee for a term that had expired before the institution of this suit, and had ever, during that time, been in possession of him, or authorized or permitted any other person to possess and detain him, he was liable, in this form of action, for the detention after his right ceased. And such only was the instruction, in its broadest and most exceptionable form.
Consequently, we are of the opinion that there was no substantial error in the instructions given to the jury-
And, however the facts may preponderate, or whatever doubt they may authorize as to the appellant’s liability, we are satisfied, that there was not such a destitution of proof as to justify this court in setting aside *46 the verdict of the jury. There are circumstances and proofs conducing, and not very slightly, to sustain all the deductions hypothetically assumed in the instructions, and all the inferences necessary to the maintenance of this action.
Wherefore, without entering into an analysis of all the facts — an exhibition of which in this opinion is altogether unnecessary, it is considered and adjudged by this Court, that the judgment of the Circuit Court be affirmed.