Case 15.

## Easley's Executors *vs.* M. A. Easley.

### APPEAL FROM FRANKLIN CIRCUIT.

1. Since the Revised Statutes went into operation, the slaves of persons dying are regarded as personal estate, and pass to the executor like other personal estate, notwithstanding they may be specifically devised; and suits may be maintained for their recovery by the personal representative, but he may not sell them unless the other assets fail to pay debts. (*Rev. Stat. chap.* 93; *art.* 1, *sec.* 3, 4, *p.* 627.)

2. An action may be maintained against one who has had the possession of slaves or personal property, though he may not have the possession when the suit is brought. (3 *Monroe*, 103; 1 *Dana*, 118.) And no demand is necessary before suit brought, (3 *Litt.* 50,) even though the defendant was bailee, and has permitted another to take the possession of the property. (3 *Dana*, 44.)

3. Where a plaintiff has made out, by proof, a *prima facie* right to recover, it is error for the court to give a peremptory instruction to find for the defendant.

4. As a general rule, the court of appeals will not reverse, unless all the evidence given upon the trial is presented in the bill of exceptions. (2 *Litt.* 182; 2 *Marshall*, 222; 1 *Dana*, 14.) This rule does not apply to a case where the bill of exceptions shows that the plaintiff, by proof, made out *prima facie* a right to recover, and the court *peremptorily* instructed the jury to find for the defendant.

5. A remote contingent interest in the decision of a suit, does not render a witness incompetent—the objection goes alone to his credibility.

6. A party objecting to the decision of the court, must state the objection, with so much of the evidence as is necessary to explain the objection, and no more. (*Code of Practice, sec.* 365.) It is the duty of the objector to see that this is done.

EASLEY'S EX's
*vs.*
M. A. EASLEY.

CASE STATED.

This suit was brought by Miller Easly, executor of Woodson G. Easley, against Martha A. Easley, the widow of said Woodson G. Easley, to recover several slaves alleged to be the property of the testator at his death.

The defendant, by her answer, denied that she detained the slaves; denied that they were the property of plaintiff's testator, and denied the plaintiff's right to the possession of them. The testimony showed that the slaves were in the possession of the testator, W. G. Easley, at his death, and many years before; that they remained in the possession of the defendant, his widow, until the end of the year after her husband's death, when they were removed and placed in the possession of the defendant's father, in the county of Franklin, before the institution of this suit.

By the will of W. G. Easley, the plaintiff's testator, the slaves were specifically devised to his three daughters Jane, Elizabeth, and Martha Ann, and a life estate therein reserved to his widow, the defendant. She renounced the provisions of the will.

*John Rodman* for appellant—

1. It was long the settled law of this state that slaves, not specifically devised, passed to the personal representative of the decedent. (*Wood vs. Wickliffe*, 5 *B. Monroe*, 189; *Darnall vs. Adams*, 13 *Ib.* 277; *Chambers and wife vs. Davis*, 15 *Ib.* 527.) Though the slave sued for, and her increase, is specifically devised to Jane, Elizabeth, and Martha Ann, the daughters of the testator, yet that devise does not take effect until the death of the widow, to whom a life estate is reserved in the slaves.

But it is insisted that the Revised Statutes has wholly changed the law upon this subject. Under the law as it stood—which provided that so far as respected last wills and testaments slaves should be held as real estate—numerous decisions were made, and a distinction taken between general and specific devises of slaves; but by the *Revised Statutes*, 627, it is provided, "that slaves, after this chapter takes ' effect, shall de deemed and held to be personal es- ' tate;" and it is further provided, "that slaves shall ' not be sold by the personal representative, unless, ' for the want of other assets, it be necessary to pay ' the debts of the decedent; nor shall slaves, specifi- ' cally devised, be sold by the personal representa- ' tive or a creditor, but by a decree of court, which ' may be obtained in a summary way, on petition, ' after ten days notice, in writing, to the devisee. ' Suits may be maintained by the personal represen- ' tative, for the recovery of slaves, or injuries to ' slaves devised." The decedent in this case died in 1854, after the Revised Statutes took effect, and the right of the executor is undeniable.

2. But it is urged, on the part of the appellee, that there was no demand before suit. This was not necessary. She did not profess to hold as bailee, but adversely, denying the right of the executor and that her husband ever had any right to these slaves, which the proof shows he had held for seventeen

years; under this state of fact no demand was necessary.

3. The circuit court erred in excluding the executor as a witness. If he had any interest it was a remote and contingent interest, which did not destroy his competency.

4. It is objected that the bill of exceptions does not show that it contains all the evidence before the jury. It is, however, insisted, that there is enough to show that the court erred. The plaintiff's testimony shows a right to recover; and if the defendant's testimony conduced to do away, to any extent, the effect of the plaintiff's evidence, it would produce a conflict of testimony, and in that state of case it would be the province of the jury to decide, and the peremtory instruction of the court to find for the defendant was erroneous. (*Fightmaster vs. Beasley*, 7 *J. J. Marshall*, 411; *Adams vs. Tiernan*, 5 *Dana*, 394.) A demurrer to evidence admits the truth of the evidence, and every reasonable deduction therefrom. (1 *Bibb*, 179, 373, 613; 2 *Ib.* 23, 462; 2 *Marshall*, 612.) Enough was proved by plaintiff to show that the jury should have decided the case, (1 *J. J. Marshall*, 300;) and the action of the court was erroneous.

*T. N. Lindsey and G. W. Craddock* for appellee—

The appellee expressly denies that she detains the slaves sued for, or that she had the possession of them; denies the plaintiff's right to the possession and right of property in them. The witness proved that the slave was in the possession of the appellee from the death of her husband until about christmas following, which was in 1855, when he, the witness, brought the negroes from Shelby to Franklin county, to the house of the father of the appellee at his request. That the woman was in the service of the appellee during the year 1855.

1. It is denied that the plaintiff can maintain this action without a demand of possession. If the defendant was bailee, without adverse holding or as-

sertion of adverse right, a demand was necessary to the maintenance of the action, which was not made. It is not shown that the removal was with the consent of the defendant.

2. The instructions of the court to the jury were right. The slaves were specifically devised to Jane, Elizabeth, and Martha Ann. As the law stood before the Revised Statutes went into effect, the executor had no right to sue for slaves of his testator specifically devised. (6 *Monroe*, 58; 1 *Ib*. 74, 424; 3 *J. J. Marshall*, 389; 6 *Ib*. 395; 9 *Dana*, 348; *Ib*. 353.) It is admitted that the Revised Statutes have made a change in regard to the rights and power of the executor over slaves specifically devised. It is insisted that the executor can only reach them by petition in equity, to which the specific devisee must be made a party.

The plaintiff was properly excluded as a witness, because he showed, by his own statement, that there is a litigation pending about the settlement of the testator's accounts, as administrator, with him, of their father's estate. That one Parker claimed to be the purchaser from one of the children of their father, and if successful will compel contribution from the witness. That he contends Parker's claim is not a preferred debt, and Parker insists that it is against the estate of Woodson G. Easley, who was the acting executor of their father. If Parker succeeds plaintiff must pay back a part of what he has received from W. G. Easley's estate. That Parker's is a preferred debt appears *prima facie* from plaintiff's own showing, as Parker claims the interest of a co-distributee or devisee with plaintiff, and stands in the same relation with plaintiff. If neither is a preferred claim the plaintiff must still refund, because the assets are insufficient without the negroes are recovered in this suit. He states, in so many words, that if he fails in this suit he will be compelled to refund.

4. The plaintiff does not profess .to set out the whole of the evidence given to the jury in his bill of exceptions. For any thing that appears, there may have been evidence sufficient to sustain the exceptions to the testimony of the plaintiff, and show that his exclusion was proper, as well as to show that the action of the court in its instructions to the jury was proper. (*Frazer vs. Harvie,* 2 *Litt.* 182; *Blue vs. Kibby, Monroe,* 196; *Rogers vs. Biggs,* 2 *Marsh.* 222.) "The court of appeals cannot say that a judgment is contrary to the evidenced, unless the bill of exceptions is certified to contain all the evidence." , (*Norton vs. Sanders,* 1 *Dana,* 14.)

EASLEY'S EX'S
*vs.*
M. A. EASLEY.

Judge SIMPSON delivered the opinion of the court.

June 10, 1857

This action was brought by the executor against the widow of the testator for several slaves, which, as alleged in the petition, she unlawfully detained from the plaintiff.

The testator's will contained a specific devise of the slaves sued for, and therefore it is insisted that the title to them passed to the devisees, and not to the executor, and that the latter cannot maintain a suit for them.

The will was executed and the testator died in 1854; the legal effect of the provisions of the will, and the rights of the executor, must therefore be regulated and governed by the Revised Statutes. Since they took effect slaves are personal estate, and, upon the death of a testator, pass to his executor like any other personal estate, notwithstanding they are specifically devised. Suits may be maintained by the personal representative for their recovery, although he is expressly prohibited from selling them, unless, for the want of other assets, a sale of them be necessary to pay the debts of the decedent. (*Revised Statutes, chapter* 93, *article* 1, *sections* 3 *and* 4, *page* 627.)

If then the slaves sued for belonged to the testator, the title to them, upon his death, passed to the

1. Since the Revised Statutes went into operation, the slaves of persons dying are regarded as personal estate, and pass to the executor like other personal estate, notwithstanding they may be specifically devised; & suits may be maintained for their recovery by the personal representative, but he may not sell them unless the other assets fail to pay debts. (*Rev. St. ch.* 93; *ar.* 1, *secs.* 3, 4, *pa.* 627.)

executor, and he has a right to maintain this action for their recovery.

But it is contended that the action cannot be maintained against the defendent, because the slaves sued for were not in her possession at the time the suit was commenced, and also because her previous possession of them was not adverse to the plaintiff's right, and the possession of them had not been demanded by the plaintiff.

The defendant, in her answer, denied that the slaves in controversy had ever belonged to the testator; alleged that they were no part of his estate; that his executor had no right to them; that they belonged to her father, and that she had held and recognized them as his property.

The testimony showed that they remained in her possession after the death of the testator, and considered in connection with her answer, it conduced strongly to prove that they had been transferred to her father's possession, with her consent and approbation.

2. An action may be maintained against one who has had the possession of slaves or personal property, though he may not have the possession when the suit is brought. (3 Mon. 103; 1 Dana, 118.) And no demand is necessary before suit brought, (3 Litt. 50,) even though the defendant was bailee, and has permitted another to take the possession of the property. (3 Dana, 44.)

An action for slaves, or other personal property, may be maintained against a person who has held the possession, although he did not have it, at the commencement of the suit. (*Bush's rep. vs. White &c.,* 3 *Mon.* 103; *Pool vs. Adkinson &c.,* 1 *Dana,* 118.) And no demand, previous to the commencement of the action, need be proved. (*Jones vs. Henry & Boggs,* 3 *Litt.* 50).

Even where the defendant is bailee, and has improperly permitted a third party to take possession of the property before suit brought, the action can be maintained. (*Rucker vs. Hamilton,* 3 *Dana,* 44.)

If, then, the defendant was the bailee of the plaintiff, she is liable in the action, without any previous demand, if she permitted the possession of the slaves to be transferred to her father before the commencement of the suit; and if her possession was adverse to the right of the plaintiff, as it must have been, according to the statements in her answer, in which his

right was denied, and the slaves were alleged to belong to another person, she is also liable, notwithstanding she did not have the possession of them at the commencement of the action.

On the trial, after the plaintiff had introduced his testimony, the court instructed the jury to find for the defendant. The court was of the opinion, as it is said by counsel, that the title to the slaves in contest passed under the will to the specific devisees, and not to the executor, and on that ground gave the instruction referred to. But whether the instruction was based upon that view of the law or not, it must be deemed erroneous, because the plaintiff had made out by proof a *prima facie* right to recover, and a peremptory instruction by the court, under the circumstances, was unauthorized and improper.

The bill of exceptions, however, does not state that the evidence which it contains is all that was given on the trial, and it is therefore contended, that this court cannot decide that the court below erred in its instruction to the jury.

As a general rule a judgment cannot be reversed unless all the evidence given upon the trial is presented in the bill of exceptions, because the court cannot usually decide whether the instructions given by the court were relevant and proper, unless all the testimony is contained in the bill of exceptions. (2 *Litt.* 182; 2 *Mar.* 222; 1 *Dana*, 14.)

In this case, however, it appears by the evidence, which is contained in the bill of exceptions, that the plaintiff had made out a state of case which would have authorized the jury to have rendered a verdict in his favor. If, therefore, no other evidence was introduced, the instruction of the court was evidently erroneous. If the plaintiff introduced other evidence in support of the action it would be equally erroneous. And if evidence was introduced to sustain the defense relied upon, and to prove that the slaves belonged to the defendant's father, it would still be erroneous, because then a peremptory instruc-

---

Easley's Ex's
*vs.*
M. A. Easley.

3. When a pl'tiff has made out, by proof, a *prima facie* right to recover, it is error for the court to give a peremptory instruction to find for the def't.

4. As a general rule the court of appeals will not reverse, unless all the evidence given upon the trial is presented in the bill of exceptions. (2 *Littell*, 182; 2 *Mar.* 222; 1 *Dana*, 14.) This rule does not apply to a case where the bill of exceptions shows that the pla'tff, by proof, made out *prima facie* a right to recover, and the court *peremptorily* instructed the jury to find for the def't.

EASLEY'S Ex's
*vs.*
M. A. EASLEY.

tion to find for the defendant could not properly have been given. The evident conclusion, therefore, is, that the instruction of the court was improper and erroneous; consequently, this case must be regarded as an exception to the general rule, and as not coming within its reason and spirit.

5. A remote contingent interest in the decision of a suit does not render a witness incompetent; the objection ¡goes alone to his credibility.

The plaintiff was offered as a witness and rejected by the court as incompetent, to which decision of the court he excepted. He stated on the examination which was made to enable the court to determine the question of his competency, that he was the executor of the decedent, and had no interest in the suit; that his testator was the executor of the plaintiff's father, and in that character was indebted to him, and some of his brothers and sisters—a small balance to each. That the balance due the plaintiff had been paid out of the assets in his hands, and he believed that he had in his hands assets enough, independent of the slaves sued for, to pay all said balances and all other preferred debts; but if it should turn out differently then he would be bound to refund ratably. This was the substance of his statement, as we understand it; and according to this statement he was clearly competent. His interest was remote and contingent, and only went to his credibility.

6. A party objecting to the decision of the court must state the objection, with so much of the evidence as is necessary to explain the objection, and no more. (*Code of Prac. sec.* 365.) It is the duty of the objector to see that this is done.

It is however contended, as the bill of exceptions does not purport to contain all the evidence, his incompetency may have been shown by other testimony, and therefore this court cannot decide that he was improperly included as a witness. But the Code of Practice provides that the party objecting to a decision of the court must state the objection, with so much of the evidence as is necessary to explain it, and no more. (*Section* 365.) This was done in this case, and if there were any other evidence introduced, that had a bearing upon the question, the other party should have seen that it was also stated on the record. But as a statement was made of the evidence upon which the decision was based the presumption is that it contains all the evidence that was

necessary to explain the objection, and enable the court to decide the question which was before it.

The plaintiff was therefore improperly excluded as a witness, according to our understanding of his statement, as contained in the exception. But it also contains a statement, that unless he recovered in this suit he would have to refund to the other heirs of his father. This statement seems to be in direct conflict with the other statements, and we have disregarded it, supposing it to have been introduced by inadvertance. If such however be the fact, he would be incompetent as a witness. What his statement is can be ascertained upon another trial.

Wherefore, for the error in the instruction of the court, the judgment is reversed and cause remanded for a new trial, and further proceedings consistent with this opinion.