## BURR & CO. vs. DAUGHERTY.

An application to recall a witness after he has been examined, is addressed to the sound discretion of the presiding judge. and if there is no showing that such discretion was abused to the prejudice of the party objecting to his re-examination, it is not the subject of review by this court.

Before a bailor can maintain replevin for goods stored with a warehouseman, he must pay or tender the amount due for storage and other expenses for which the warehouseman has a lien upon the goods—*as to instructions upon the subject of tender see opinion*.

Where a warehouseman agrees to receive goods at another than the place of storage, he is bound to exercise ordinary diligence in their removal and preservation from waste; and if from the want of common and reasonable diligence in their removal they are destroyed, he would be responsible to the bailor in a proper form of action.

The action of Replevin will not lie for property not in existence at the time of the issuance of the writ.

*Appeal from Independence Circuit Court.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

BYERS, for the appellant.

That the court erred in permitting the plaintiff to *recall Ledger*, and examine him *in chief*, and upon the same subject that

he had been examined upon, see *Freleigh vs. The State*, 8 *Miss. R.* 606; *Brown vs. Burris*, 8 *Miss. R.* 26; *U. S. vs. Wilson*, 1 *Bald. Rep.* 79; *People vs. Mather*, 4 *Wend. Rep.* 229; *Law vs. Merrells*, 6 *Wend. Rep.* 268; *Hughes vs. Mulvey*, 1 *Sandf. Sup. Ct. Rep.* 92.

The instructions given by the court on the motion of the plaintiff and on its on motion were erroneous, or abstract, or inapplicable to the facts in the case, and had a tendency to confuse and mislead the minds of the jury, rather than to point out the law to them applicable to the evidence in the case.

The finding of the jury was clearly against the evidence. There is no evidence in the case of the appellee having sustained any damage whatever, *by the detention of the salt.* There is no evidence tending to show any damage. So, that part of the verdict which finds damages sustained by the appellee, by the detention, to be $72 50, has no evidence whatever to support it.

FOWLER & STILLWELL, for appellee.

In permitting the witness Ledger to be recalled, the circuit court exercised its discretion, which will not be controlled here. *Lindsay vs. Wayland* 17 *Ark.* 389.

That the instruction given on the part of the appellee, when considered in connection with that given by the court on its own motion, correctly conveyed the law to the minds of the jury, see 15 *Wend. R.* 638; 10 *Ib.* 377; 2 *Car. & Payne* 77; 10 *East* 101; 7 *Moore*, 59; 7 *J. R.* 477.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

In July, 1855, the keel boat FASHION, belonging to Daugherty, was ascending the White river, from Jacksonport to *Buffalo City*, with a cargo of salt; and on reaching Batesville it was found that the river was too low for the boat to get up higher without putting off part of her load—accordingly, an officer of the boat, on the 7th of July, made a contract with the firm of Burr & Co., (composed of Burr and Archer,) who were merch-

ants at Batesville, and kept a wharehouse on the bank of the river, to receive on storage about 460 sacks of salt. The salt was put out of the boat, on the sand bar, about three hundred yards from the warehouse, and on the same day, the most of it was removed to, and deposited in a shed attached to the warehouse; but a portion of it remaining on the sand bar during the following night, it was damaged, and part of it destroyed by an unexpected rise of the river.

On the 24th of the same month, Daugherty commenced an action of replevin against Burr & Co. for the salt. Such of it as had not been wasted by the river was replevied by the sheriff, and delivered to him; and afterwards, upon a trial of the cause, he recovered judgment against them for $72 50 damages, and for costs. A new trial was refused them, and they excepted and appealed.

1. The first ground of the motion for a new trial is, that the court erred in permitting the appellee to recall the witness *John Ledger* after he had been examined in chief, cross examined, and after several other witnesses had been examined.

On his first examination, Ledger testified in relation to an alleged tender made by appellee to appellants of the amount of the charges due them for storage, &c. The court permitted him to be recalled on a statement of the counsel of appellee that his memory had been refreshed by hearing the deposition of Alexander read, who also deposed in relation to the tender; and upon the further statement of the counsel that he wished to prove by Ledger that the salt replevied was the same salt that was stored at the warehouse of appellants, etc.

On his second examination, the witness stated nothing in relation to the tender that he had not testified on his first examination; and he stated nothing in relation to the identity of the salt that was not proven by other witnesses.

The application for permission to recall the witness was addressed to the sound legal discretion of the presiding judge, and there being no showing that such discretion was abused to the prejudice of appellants, it is not the subject of review by

this court. *The People vs. Mather*, 4 *Wend. R.* 231; *Freleigh vs. The State*, 8 *Mo.* 612; *Brown vs. Burrus, Ib.* 30.

2. The next ground of the motion for a new trial is, that the instructions given to the jury at the request of the appellee, as well as those given on its own motion, were erroneous.

The instructions given at the instance of the appellee, are as follows:

1st. " If the jury believe from the evidence, that plaintiff stored with the defendants the property in the declaration mentioned, or any part thereof; and that the plaintiffs were entitled to the possession of the same at the commencement of this suit, and had paid or tendered to the defendants the amount due them for storage of the property in the declaration mentioned, before the institution of the suit; and demanded the delivery of the property to plaintiff from the defendants, and defendants refused to deliver the same, they must find for the plaintiff.

2d. " To constitute a tender in law, it is not necessary to count out the money to defendants. The production of the money due from plaintiff to defendants for storage of the goods in question, and an offer by the plaintiffs to pay the same to defendants, is sufficient.

3d. " If the jury believe from the evidence, that plaintiff stated, in the presence or hearing of Burr & Co., or any member of the firm of Burr & Co., that he had tendered to them, or him, the money due for storage of the goods in question, before this suit was instituted, and they, or he, having heard the statement, and not making denial of its truth; this is a strong circumstance showing that tender had been made by plaintiff to the defendants in apt time.

At the request of the appellants, the court instructed the jury as follows:

1st. If the jury find from the evidence, that the defendants kept a warehouse, and received any portion of the salt in the declaration mentioned, from the plaintiff, to be stored by them until called for by the plaintiff, that the defendants were only

bound as warehousemen to make use of ordinary diligence about the preservation of such salt; and if they find from the evidence that the defendants did make use of ordinary diligence in the preservation of said salt, and the salt was damaged by an unexpected rise in the river, that the defendants are not liable for the damage caused by such unexpected rise in the river.

2d. If the jury find from the evidence, that the plaintiff deposited with the defendants, as warehousemen, the salt mentioned in the declaration, or any part thereof, to be stored by the defendants, and that the defendants were to have a certain amount for the storage thereof; that, in law, the plaintiff cannot maintain this action unless the jury further find from the evidence, that before the commencement of this suit, the said plaintiff, or some person for him, tendered to the defendants the amount of money due them for the storage of such salt, (or that the defendants waived such tender,) and demanded of the defendants the said salt, and a refusal of the defendants to let the plaintiff have the salt.

The following are the instructions given by the court on its own motion.

"1st. The first enquiry for the jury is, whose salt is it.

2d. The value of the separate sacks of salt.

3d. The damage.

4th. A tender, in order to be good in law, must be actually produced. The law attaches great importance to the production of the money, as the sight of it might tempt the creditor to yield and accept it. It must be in sight and capable of immediate delivery; but it will be sufficient to show that if the creditor was willing to receive it, it was ready to be paid. To support a tender of money, it is necessary to show that the precise sum due, or more, was actually produced in current money, and such as is made a legal tender, and actually offered to the creditor. But if the creditor say, you need not show your money, I will not accept it, or anything to supersede the

production of the money, in such case it is not necessary actutually to produce or exhibit the money."

It is objected to the first instruction given for the appellee, that it is not broad enough—that the court told the jury that appellee was entitled to recover if he had paid or tendered to appellants the amount due them for the *storage* of the salt, etc., when they had a lien also for money advanced by them for hauling the salt from the river to the warehouse, which the appellee was bound to have paid, or tendered to them before suit.

There appears to have been no controversy at the trial, about the right of the appellants to be paid the expenses incurred by them, for hauling the salt from the river to the warehouse, as well as for keeping it there.     The contract between the parties, as proven by appellee's own witness, was, that the salt was to be stored at the rate of seven cents per sack for the first month, and three cents a sack for each additional month it might remain in the warehouse; and that appellants were to be paid the necessary expense for hauling from the river, etc.

It is manifest, therefore, that the court did not mean, by the language employed in the instruction in question, to make a distinction between the expense of hauling the salt from the river, and the charge for storage proper, or to exclude the former, and that the jury could not have so understood the court, but that both were included.    It will be observed that in the second instruction moved for the appellant, the same language is employed—*the amount due them for the storage of the salt*—as in the first instruction given for the appellee.

Looking at all of the instructions given by the court in relation to the subject of tender together, and it is not perceived that they are subject to any substantial objection.    That given by the court, of its own motion, which is most complained of, appears to have been copied almost literally from several sections of *Mr. Greenleaf's article* on Tender, in his work on Evidence, 2 *vol.*, *p.* 562.    The evidence conducing to establish the tender is by no means of a very satisfactory character, but the instructions cannot be said to be abstract—they were based

upon some evidence, and the jury were the judges of its weight.

The 1st, 2d and 3d instructions given by the court, on its own motion, if they may be termed instructions, declare no legal proposition at all, but were merely designed to call the attention of the jury to the subject, or points in the cause, to which they were to direct their attention in making up their verdict, and could, in no way, have been prejudicial to the appellants.

3. It was assigned as further grounds of the motion for a new trial, that the damages assessed by the jury were excessive, not supported by any evidence, and that the verdict was informal, etc.

The verdict of the jury was as follows:

" We, the jury, find the property in the declaration mentioned to be in the plaintiff; we also find the separate value of each sack of salt in the declaration mentioned, to be $2 50; we also find the damages sustained by the plaintiff, by reason of the detention to be $72 50."

The court rendered judgment in favor of the appellee, for the amount of damage assessed by the jury, and for costs.

It was proven on the trial that the salt was deposited in the shed attached to the warehouse, on the 7th of July, 1855, the suit was commenced on the 24th of the same month, and the salt replevied and delivered to the appellee on the next day. At what time the salt was demanded by the appellee of the appellants, does not certainly appear, but it is to be inferred from the evidence, that the demand was made but a few days before the suit was commenced. It was not proven that appellee suffered any special damage by the detention of the salt after demand, and the jury must have embraced in the amount of damage assessed by them, the value of the salt that was destroyed whilst it was on the sand bar, by the rising of the river.

The principal point of controversy upon the trial, judging from the evidence, seems to have been, whether the appellants were responsible for the damages done to the salt by the sud-

den and unexpected rising of the river, before all of the salt was removed from the sand bar to the warehouse.

ADAMS, the clerk of the keel-boat, who made the contract with the appellants for the storing of the salt, testifies, positively, that they were to receive it at the river, and another witness testifies, that SHAW, their clerk, did receive it there; but SHAW testifies, with equal positiveness, that appellants were to receive the salt at their warehouse, and were not to be responsible for it until it was delivered there, and that he did not receive it at the river.

It may be assumed, however, for the purposes of this case, that the jury were warranted in finding that appellants agreed to receive the salt on the sand bar, it being their province to judge of the weight of the evidence.

The evidence also conduces to prove that 460 sacks of salt were put out of the keel-boat on the sand bar. That the boat's hands commenced putting out the salt about 11 o'clock, a. m., of the 7th of July, and that by the time they had put off about 50 sacks, a wagon belonging to Burr, and several others, commenced hauling the salt up the bank of the river to the warehouse, and continued to haul until night, but did not get all of the salt up. That the river was very low, the weather dry, the sky clear, and no appearance of rain, or probability of a rise in the river—that during the night an unexpected rise came from above, swelling the river several feet at the sand bar, where the salt was lying. On the next morning about daylight, an officer of the keel-boat awoke the clerk of appellants, and informed him that the river had risen, and that the salt was being destroyed, and the clerk immediately went down, employed hands, and removed so much of the salt as had not fallen into the river, or been wasted by the water.

Assuming that the appellants agreed to receive the salt on the sand bar, they were bound, as warehousemen, to exercise ordinary diligence in its removal to the place of storage, and its preservation from waste. *Story on Bail.* 465. If for want of

common and reasonable diligence in the removal of the salt from the sand bar, a part of it was destroyed, they are doubt-less responsible to the appellee therefor in the proper form of action.

But assuming that the jury found from the evidence in this case, and that they were warranted in finding, that a portion of the salt was lost for want of proper diligence on the part of appellants in its removal from the sand bar, the question recurs, was it in accordance with law for them to include the value of the salt so destroyed in their assessment of damages for the *detention* of the salt in this form of action, as they must have done? The proof shows that nine of the sacks of salt deposi-ted on the sand bar went into the river and were lost, and that the water was over some 10 or 15 other sacks, and wasted most of the salt from them. The sheriff returned upon the writ that he replevied from appellants and delivered to appellee, "421 sacks of salt, and thirty pieces of sacks of salt." It was proven that no damage was done to the salt after it was removed to the warehouse, but that it was kept there safe and dry until replevied. In other words, to state the matter briefly, a portion of the sacks of salt sued for were not in existence when the suit was commenced, but their value was included in the amount of damages assessed by the jury.

The action is replevin in the *detinet* for 462 sacks of salt alleged to have been placed in the hands of appellants as bailees, and unlawfully detained after demand, etc.

This form of action is statutory. It lies in cases of bailment, or in any case where the plaintiff is entitled to the immediate possession of personal property, and it is wrongfully detained by the defendant. The action is for the property in specie, and damages for its detention. If the goods sued for have been replevied under the writ and delivered to the plaintiff, and he recover in the action, the judgment is, that he retain the goods, and recover of the defendant the dama-ges assessed by the jury for their unlawful detention. If he goods have not been replevied and delivered to the

plaintiff, the judgment is that they be replevied and delivered to him without delay, or, in default thereof, that he recover from the defendant the value of the goods as ascertained by the jury, as well as the damages assessed for their detention. *Gould's Dig., chap.* 145, *secs.* 1, 37-8-9.

In this case, if the whole of the salt had been in existence when the suit was commenced, and but part of the sacks had been replevied and delivered to the plaintiff, he would have been entitled to judgment that he retain the sacks replevied, and that the remaining sacks be replevied and delivered to him, or, in default thereof, that he recover of the defendants the value thereof, as assessed by the jury, together with such damages as the jury might have assessed for the detention of the whole of the salt from the time of the demand—the defendants being bailees. But, as above shown, a portion of the salt had been destroyed before the suit was commenced.

If the whole of the salt had been swept from the sand bar, by the rise of the river, and none of it had been in existence at the time the action was commenced, could replevin in the *detinet* have been maintained therefor against the appellants? We think not, and the objection applies to so much of the salt as had been destroyed in this case before suit.

Replevin in the detinet, under the statute, and *detinue* are similar actions in all respects, except that in the former action the plaintiff may obtain possession of the property by means of the original writ, by executing the bond required by the statute; and, in the latter action, the possession abides the determination of the suit.

In *Caldwell vs. Fenwick,* 2 *Dana* 333, the action was detinue for two slaves, and it was proven on the trial that one of them was dead before the institution of the suit. The question was, could the suit be maintained for the slave that was dead, and the court said: "It seems to us that it cannot. The frame of the action and the principles of pleading prohibit it. Detinue is a mode of action given for the recovery of a specific thing, and damages for its detention. Though judgment is, also,

rendered in favor of the plaintiff for the alternate value, provided the thing cannot be had; yet the recovery of the thing itself is the main object and inducement to the allowance of the action. The thing sued for has to be so specifically described, in the writ, declaration, judgment, and execution, that it may be distinguished from other things of the same species. The action is not adapted to the recovery alone of the value of a thing detained; nor can it be maintained therefor. The alternate judgment for the value, is but a mere incident to the judgment for the thing; nor can it be rightfully rendered, except where there is a judgment for the thing, from which it can result as an incident or consequence. It would seem, therefore, to be an indispensable requisite that there should be a thing sued for. A demand for a dead slave does not fulfill this requirement. It is not a thing of estimation or value, such as the law requires to constitute the basis of an action."

" Upon the principle of obviating inconvenience (continues the Court) the action is allowed where the defendant has parted with the possession before suit brought. But where the thing is still in existence, it is a something to be sued for, and, per possibility, the defendant may obtain it, and surrender it in discharge of the judgment (1 *Dana* 18). Where the thing has been utterly destroyed before suit brought—where it no longer exists, the plaintiff's claim is reduced to a mere demand for reparation in damages, to be pursued by other and more appropriate remedies. Where the slave died after the suit was commenced, it was held that the action was maintainable. 4 *Bibb* 270."

In *Lindsey vs. Parry*, 1 *Ala.* 204, the Court said: " No case has been referred to establishing the principle that an action of detinue will lie after the destruction or death of the chattel sued for; nor have our researches enabled us to discover any; on principle, we think such an action cannot be maintained. The action is brought for the recovery of the specific article or its alternative value. We do not subscribe to the position that it is at the election of the party to deliver the article after the

36

judgment, or not, at his pleasure, where it is in his power to deliver it· But the writ is framed, and its precise object is, to recover the article in specie, and when this is impossible at the time of the action brought, so that the object of the writ cannot be accomplished, the action will not lie."

See also *Cutter vs. Wittenhall*, 3 *Hill* 577, where the Court said: " In order to maintain replevin, the plaintiff must show a right to have delivery of the property at the time of the issuing of the writ. The proceeding is partly *in rem*, and unlike trespass or trover, which seeks damages only." Also *Boyan vs. Stoutenburgh*, 7 *Ohio* 471.

If by culpable negligence of the appellants, a portion of the salt placed in their care as bailees was destroyed before the commencement of this suit, the remedy of the appellee for the value of that portion of the salt, is by an appropriate action on the contract of bailment.

The verdict of the jury for $72 50, being without any evidence to sustain it, the judgment must, for this error, and for it only, be reversed, and the cause remanded, with instructions to the court below to grant the appellants a new trial.

Mr. Justice FAIRCHILD did not sit in this case.