[Civ. No. 735.   Fourth Appellate District.—August 4, 1932.]

SAVIA FERRIS, Respondent, v. C. A. COOPER, Appellant.

Strother P. Walton for Appellant.

J. E. Manning and Fred Baruch, Jr., for Respondent.

MORTON, J., *pro tem.*—Plaintiff filed an action of claim and delivery against defendants for a well-drilling rig and equipment which she alleged defendants had taken possession of without her consent. She secured judgment for its return, or, its value in the sum of $1200 as determined by the trial court, together with $800 damages for its detention.

It appears that plaintiff was indebted to defendant Thompson, and with Thompson's authorization in October, 1926, gave a chattel mortgage on the well rig and equipment to defendant Cooper for $401. Thompson was indebted to Cooper in excess of the amount of the mortgage. Plaintiff had paid Cooper $100 on this mortgage at the time of the taking of the well rig outfit which was located on a rented lot in Sanger and the tools for same were in a locked shop situated on an adjoining lot. She had previously endeavored to sell the outfit to Thompson, but he could only buy if Cooper would finance him, which Cooper refused to do. Shortly thereafter Thompson wired plaintiff at Oakland for permission to use the tools, which permission was not granted. Cooper then went to Oakland to see plaintiff about the well rig outfit but no definite agreement was reached. Defendants took possession of the well rig about April 16, 1929. The tools were secured by breaking open the shop. Some necessary repairs were made and the outfit put to their own use.

Defendant Cooper appeals contending that he was entitled, under the terms of his chattel mortgage, upon default, to take possession of said personal property and therefore a claim and delivery action would not lie against him. No evidence was offered as to the terms of the note

secured by the chattel mortgage or that respondent was in default as to said note and chattel mortgage. No evidence was introduced to show a breach of any obligation or promise of the mortgagor. Appellant Cooper therefore has no basis upon which to justify a taking under the terms of his chattel mortgage. We are also unable to find satisfactory evidence upon which to support appellant's contention that plaintiff instructed him to turn the property over to Thompson and Peterman.

As to appellant being directly involved in the taking possession of the property, we find this testimony on his cross-examination: "Q. Did you turn the rig over to Mr. Thompson? A. Yes. Q. You did, yourself, personally? A. Yes, sir. Q. Did you tell Mr. Thompson to go and break into the shop and get the tools and parts of the rig? A. No, I didn't know as anybody broke into the shop. Q. Well, did you tell him to go into Mrs. Ferris' shop and get the rig—the tools and the things that were in there? A. No, I don't think I did. Q. Well, did you—did you not tell Mr. Thompson that that shop—that that building belonged to you and you had a right to go into your own property? A. Well, I might have said—well, I don't know—'I don't see how she can hold this, have the door locked there and never turn it over, and turn me over the rest of it. How am I going to get what belongs to me'."

In the testimony of defendant Thompson we find the following: "Q. You just went back and took it. Did you tell Mr. Peterman to break the lock on the shop of Mrs. Ferris? A. I did. . . . Q. You wanted to make some casing and could not get into the building, is that it? You knew, that building belonged—was rented by Mrs. Ferris, didn't you? A. Yes, sir. Q. Still knowing that it was Mrs. Ferris' property in there, you told Mr. Peterman to break the lock, is that it? A. I had authority to break the lock. Q. What? A. I had authority from Mr. Cooper for that. Q. You had authority from Mr. Cooper to break into the premises of Mrs. Ferris? A. Yes, sir. Q. I see. So Mr. Cooper told you to go and break that lock? A. He did." Considering all this evidence it appears that the taking was the joint act of all three defendants, Cooper, Thompson and Peterman, and that the property remained in their possession. No definite deal was consummated between

Cooper and Thompson whereby Thompson would acquire Cooper's interest. It presumably remained under the joint control of the three defendants, however, Cooper seems to have had the greater interest because of his former chattel mortgage rights. ■ In claim and delivery, defendants' possession may be actual or constructive. (*Eastern Outfitting Co., Inc., v. Myers*, 39 Cal. App. 316 [180 Pac. 699]; *Taylor* v. *Bernheim*, 58 Cal. App. 404 [209 Pac. 55].)

Appellant states: "Since Thompson has not appealed, appellant Cooper is really not concerned with the value of the property as it is to be assumed that the judgment as to the possession of the property has been or will be satisfied." Although somewhat contradictory there is sufficient evidence to support the finding of the trial court as to a value of $1200 for the well rig and tools.

■ As damages for detention of the well rig and tools the trial court found for respondent in the sum of $800. Defendants had had possession of the personal property for approximately seven months and, according to the testimony of defendant Thompson, had used it on two well-drilling jobs. "The ordinary measure of damages for the wrongful detention of property is interest. Where, however, the property has a usable value which exceeds the lawful rate of interest this rule has no application. In such a case the successful party is entitled to recover, as damages for the detention, the value of such use during the period that he was wrongfully deprived thereof. And this value is to be estimated by the ordinary market price of the use of such property." (*Tucker* v. *Hagerty*, 37 Cal. App. 789, at 791 [174 Pac. 908, 910].) See, also, *Stanley W. Smith, Inc.*, v. *Pilgrim*, 117 Cal. App. 244 [3 Pac. (2d) 573].

Respondent had operated the well-drilling business since the death of her husband, approximately two and one-half years, taking contracts for boring wells, etc. She testified a fair rental value for the outfit would be $20 per day. The witness Brose, who was in the well-drilling business and operated a well rig similar to plaintiff's, gave testimony that he received for the use of his machine operated by an experienced man and one helper, $35 for a ten-hour day less ten per cent for cash. His experienced man received $180 per month, the helper forty cents per hour. There-

fore, by arithmetical computations the trial court could arrive at a fair rental value for the well rig and equipment.

There was sufficient evidence to show that a few months prior to the taking possession of the personal property by defendants it was in fair running condition. In consideration of the fact that the defendants had possession of the personal property for seven months and had used it on at least two well-drilling jobs, we are of the opinion that the damages allowed were not in the least excessive.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 29, 1932.