[Civ. No. 1192.   Fourth Appellate District.—October 9, 1935.]

JOSEPH SHOCKLEY et al., Respondents, v. E. H. EL-MORE et al., Appellants.

Hunter M. Muir for Appellants.

Ed. P. Sample and William H. Wylie for Respondents.

MARKS, J.—This action was brought for the recovery of personal property, together with damages for its detention. The trial court gave judgment for plaintiff for recovery of the property, or its value of $400, if delivery could not be had, and damages for its detention in the sum of $1,050.

Defendants are dealers in gasoline, oils and other petroleum products. Plaintiffs desired to purchase a service station on East University Avenue in the city of San Diego. This station was owned by Mrs. Louise Evans and was situated on real estate leased from Joseph E. and Clara Kimpton. Plaintiffs negotiated with defendants to secure money with which to acquire the service station with the following results: Plaintiffs secured a lease on the real property from Mr. and

Mrs. Kimpton; defendants purchased the service station equipment from Mrs. Evans; by a conditional sales contract, defendants agreed to sell, and plaintiffs agreed to buy the service station equipment for $513.44, payable as follows: $13.44 in cash, and $500 in twenty equal payments of $25 each commencing on August 1, 1933, and on the first day of each month thereafter. The conditional sales contract was dated June 10, 1933, and plaintiffs went into possession and operated the station until October 20, 1933. During that time they paid defendants two payments of $25 each. On that day they sold their interest in the service station, together with the lease, to A. J. Danecki on a conditional sales contract. Defendants consented in writing to this sale but expressly provided that the terms of the original sales contract must be adhered to.

Danecki was associated with T. C. Burkhalter in the purchase, though the exact relation between them does not appear. They went into possession of the property and proceeded to operate it. On January 6, 1934, Danecki told E. H. Elmore that he was "broke" and wanted to turn over the keys of the service station. This resulted in the following arrangement: Defendants refused to accept the keys; Danecki and Burkhalter gave defendants a bill of sale to the service station equipment which provided that it was "given to secure equipment account of $122.73 & past due payments of $54.00 on equipment contract" and that "when said balances are paid in full this bill of sale shall be null & void". The gasoline and oil to be delivered by defendants was to be paid for daily and all other income from the station was to belong to Burkhalter, or to Burkhalter and Danecki. From January 6, 1934, Burkhalter is mentioned in the evidence as the one chiefly engaged in operating the station though it appears that Danecki worked there on occasions. It does not appear that Danecki sold or assigned his interest in it.

About March 15, 1934, either Burkhalter or Danecki telephoned Shockley and told him that the rent had not been paid to Mr. and Mrs. Kimpton and that he would have to take over the station. Shockley paid the month's rent of $50 which was then due and went to the station where he met a salesman of the defendants to whom he explained the situation. The salesman told Shockley that if he took over the station defendants would lose several hundred dollars owed them by

Burkhalter and Danecki. He asked Shockley to see Mr. Elmore, which he did. Defendants repaid Shockley the $50 rent. Shockley did not take over the station, but agreed to the continued operation of it with Burkhalter in charge.

On March 22, 1934, defendants removed Burkhalter from the management of the station and put an employee of their own selection in charge.

Early in April, 1934, plaintiffs assigned their interest in the station to A. H. Dysart. There was no actual sale to Dysart, he appearing in the transaction as the representative of plaintiffs in effecting a sale and was to receive all of the purchase price in excess of $1,000. On April 7, 1934, Dysart entered into a conditional sales contract with Norman L. and W. Boyd De Hay whereby he agreed to sell the service station and assign the Kimpton lease to them for $1,000, payable, $600 in cash, and $400 in deferred payments. The transaction was placed in escrow with a title company and $200 was paid into the escrow. Under date of April 11, 1934, Dysart wrote the title company authorizing it to pay to defendants the balance of $392 unpaid on the conditional sales contract with plaintiffs upon their giving him a bill of sale of the "fixtures and equipment" in a form to be approved by Dysart and giving him peaceful possession of the property. Under date of April 10, 1934, the attorney for defendants wrote the title company informing it that Shockley had no title in the service station equipment either to sell or assign to Dysart. On April 20, 1934, the escrow was closed by the refund to the De Hays of the $200 which they had deposited in it. This action followed.

We have studied the transcript carefully and find that much is left to the imagination concerning the various transactions involved. From the evidence we think the following conclusions are justified and cannot be in serious dispute: That on January 6, 1934, there were delinquent instalments due and unpaid on the Shockley-Elmore conditional contract of sale of June 10, 1933, of $40 or more and that nothing was paid on that contract after that date; that there was and is $390 unpaid on that contract; that the Shockley-Danecki conditional sales contract was in default on January 6, 1934, and that nothing was paid on it thereafter; that plaintiffs never took any steps to terminate their conditional sales contract

with Danecki and were never in possession of the service station or any of the equipment in controversy here after they gave Danecki possession on October 20, 1933; that defendants took no steps to terminate their conditional sales contract with plaintiffs, at least prior to March 22, 1934. The evidence concerning the happenings at that time is too meager and uncertain to permit us to hazard a guess as to the results following the action of that day.

The trial court found "that on January 6, 1934, defendants, without notice to the plaintiffs, but with full knowledge and notice of plaintiffs' right, title and interest in and to said personal property herein described, and at a time when the plaintiffs were not in default either as to the payments to be made under said agreement of June 10, 1933, or in the performance of any of the terms, covenants or conditions contained in said contract to be performed by plaintiffs, entered upon the premises at 4685 University Avenue, San Diego, California, and took possession thereof, and of all the personal property described herein in finding 1; and that said defendants at all times subsequent to January 6, 1934, have retained possession of said personal property, and of said gasoline and oil station upon the premises at 4685 University Avenue, San Diego, California, and are now in possession thereof."

Practically all of this finding is contrary to undisputed evidence. Elsewhere the trial court found that $123.44, including the down payment of $13.44, had been paid on the contract of June 10, 1933. There were six payments of $25 each, or $150, due on the contract according to its terms not including the down payment, leaving an admitted balance of $40 in default. Defendants did not take possession of the service station on January 6, 1934. The bill of sale shows on its face that it was given as security for a debt owed by Danecki and Burkhalter. It amounted to nothing more than security between the parties for this debt. (*Bonestell* v. *Western Automotive Finance Corp.*, 69 Cal. App. 719 [232 Pac. 734].)

The trial court found that "said F. J. Danecki and T. C. Burkhalter, in March, 1934, with the consent of plaintiffs herein, rescinded the conditional sales contract made on or about October 30, 1933, referred to in finding VI hereof,

and surrendered to the plaintiffs any and all rights that they might have in said personal property herein described by reason thereof''.

This finding is without evidentiary support. We have already detailed the transactions of March 15th or 16th which left Burkhalter in charge of and operating the service station. Shockley freely admitted that neither he nor Palmer were in possession of the station at any time after October 20, 1933, and there is nothing in the record upon which a conclusion of mutual rescission of the contract can be based.

The trial court found that the reasonable value of the use of the personal property for the eight months following March 22, 1934, was $180 per month, or $1440. This finding is also without evidentiary support. The only testimony bearing upon this subject is that of Shockley. He testified that he and Palmer operated the station from June 10, to October 20, 1933, without receiving any salary. He first testified that the ''gross income'' from the station was $250 per month. This he later changed to ''gross profits''. He admitted that about $70 per month had to be paid from these ''gross profits'' for rent, light and water. He refused to say that he and his partner received for themselves as much as $50 apiece per month out of the station income. He testified that he had boarded and lodged with Palmer and that all the income from the station left after paying operating expenses had been used to pay grocery bills, rent, heat, light and water bills. There was no attempt to prove the reasonable value of the use of the property after March 20, 1934, or the profits, if any, made by the defendants after that date. It is evident that the ''gross profits'' of $250 a month were not the results of the use of the personal property in question here, but in addition thereto were the results of the use of the leasehold estate, the money invested by plaintiffs in the purchase of supplies and plaintiffs' own personal services. It should be remarked that the complaint alleged damages as follows: ''That the reasonable market value and use and occupancy of said gas station is one hundred dollars ($100.00) per month'' which for the eight months involved would amount to $800. The findings placed the reasonable value of the use of the personal property at $180 per month, or $1440. The judgment gave plaintiffs damages for the detention,

deprivation and use of the personal property in the sum of $1,050, or $131.25 per month. The total value of the personal property was fixed at $400.

In *Bonestell* v. *Western Automotive Finance Corp., supra,* it is said: "Section 3359 of the Civil Code provides that 'damages must, in all cases be reasonable' and unless the damages allowed are shown to be such as approach actual, usable, or reasonable value of the article to the owner they have no support in this section. In the case of *Mutch* v. *Long Beach Improvement Co.,* 47 Cal. App. 267 [190 Pac. 638], the rule for determining damages in such cases as this is very clearly set forth. It is there said: 'It is the net usable value less the expense of keeping up the property which may be recovered. In determining the value of the use under the above rule, care should be taken not to permit the fixing of an amount out of all proportion to the value of the thing itself.' " (See, also, *Tucker* v. *Hagerty,* 37 Cal. App. 789 [174 Pac. 908]; *Stanley W. Smith Inc.* v. *Pilgrim,* 117 Cal. App. 244 [3 Pac. (2d) 573]; *Ferris* v. *Cooper,* 125 Cal. App. 234 [13 Pac. (2d) 536].)

The trial court found there was a balance of $390 of the purchase price of the personal property unpaid from plaintiffs to defendants under the terms of the conditional sales contract. No account was made of this in the judgment which adjudged plaintiffs to be the owners and entitled to the possession of the property. The amount unpaid on the contract does not appear to have been in serious dispute and the trial court should have taken cognizance of this debt in the judgment. The findings were signed by the trial judge some time after the conclusion of the trial.

Actions of this kind are merely for the recovery of possession of personal property and damages for its detention by one entitled to its immediate possession. Ownership of the property is only important when it bears on the right of possession. (5 Cal. Jur., pp. 155 et seq., and cases cited.) On a retrial of their case counsel should confine the evidence offered to the real issues involved.

An order bringing in new parties defendant, and an order denying a motion for new trial are not appealable. (Sec. 963, Code Civ. Proc.)

The attempted appeals from the order bringing in new parties defendant and from the order denying the motion for new trial are dismissed.

The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.