[Civ. No. 2796.   Third Appellate District.—November 20, 1924.]

## C. K. BONESTELL, Respondent, v. WESTERN AUTOMOTIVE FINANCE CORPORATION, Appellant.

[1] CHATTEL MORTGAGES—SECURITY FOR REPAYMENT OF LOAN—BILL OF SALE AND CONDITIONAL SALE AGREEMENT OF AUTOMOBILE—POSSESSION.—Where the owner of an automobile, in order to secure the repayment of a loan, gave a bill of sale of the automobile to the lender, and the latter then executed and delivered to the owner a conditional agreement of sale of said automobile which showed the making of a fictitious payment at the time of the signing of the agreement, leaving the amount of the loan as the balance to be paid thereunder, and there was no transfer or retransfer of possession of the car, the whole transaction constituted a mortgage under section 2924 of the Civil Code, the automobile in question was impressed only with a lien, the legal title to the car remained in the borrower, and the lender was not entitled to possession unless authorized by the express terms of the mortgage.

[2] ID.—POSSESSION — FORFEITURE — PROVISION IN CONDITIONAL SALE AGREEMENT VOID—REDEMPTION—WRONGFUL TAKING.—The provision in such conditional agreement of sale, which purports to give the lender the right to take possession of the automobile in case of default in payment of any installment, being inseparably connected with that portion of the instrument which attempts to cut off the debtor's equity of redemption, is void, and as the debt had not matured at the time of the taking possession of the car by the lender, the latter's action in taking possession was unwarranted under such agreement, and it became, therefore, liable for any damage or detriment caused by such action.

[3] CLAIM AND DELIVERY—VALUE OF POSSIBLE USE OF CAR—FINDING —EVIDENCE.—In this action of claim and delivery of an automobile, the evidence does not support the finding of the trial court as to the value of the possible use of the car while it was detained.

[4] ID.—VALUE OF POSSIBLE USE OF CAR—DAMAGES.—In an action of claim and delivery of a car, unless the damages allowed for the possible use of the car are shown to be such as approach actual, usable, or reasonable value of the article to the owner, they have no support in section 3359 of the Civil Code, which provides that "damages must, in all cases, be reasonable."

---

1.  Distinction between conditional sale and mortgage, notes, 1 Am. St. Rep. 63; 3 Ann. Cas. 639; Ann. Cas. 1912C, 361. See, also, 5 R. C. L. 387; 5 Cal. Jur. 43.

2.  See 5 R. C. L. 472; 5 Cal. Jur. 111.

3.  See 23 R. C. L. 911; 5 Cal. Jur. 206, 208.

[5] ID. — WRONGFUL TAKING — SUBSEQUENT TRANSFER OF INTEREST.—
In an action of claim and delivery of an automobile which was
wrongfully taken by defendant under a provision in a conditional
agreement of sale purporting to give it the right to take posses-
sion thereof in case of default in payment, which conditional
agreement of sale was executed and delivered by defendant to
the owner of the automobile after the latter had made a bill of
sale of the car to defendant for the purpose of securing the
repayment of a loan from defendant, the defendant cannot escape
damages for the wrongful taking by parting with its interest in
the automobile after having taken possession of the car under
said provision in the conditional agreement of sale.

[6] ID.—REPAYMENT OF LOAN—JUDGMENT—ISSUES—APPEAL.—In such
action, the contention of defendant that judgment should not have
been given in favor of the plaintiff without providing for the
payment of the balance due on the loan for the repayment of
which the bill of sale and conditional agreement of sale were exe-
cuted as security cannot be considered on appeal, where the mat-
ter was not tendered to the trial court and was not made an
issue in the case.

[7] ID.—MOTION TO VACATE JUDGMENT—PROPER DENIAL OF.—In such
action, defendant's motion to vacate and set side the judgment
under section 473 of the Code of Civil Procedure, having been
predicated upon the erroneous theory of title and ownership of the
car in defendant, such motion was not well founded.

[8] ID.—FAILURE OF ATTORNEY TO MAKE SKILLFUL PRESENTATION OF
CASE—RELIEF UNDER SECTION 473, CODE OF CIVIL PROCEDURE, UN-
WARRANTED.—The mere fact that an attorney does not make a
skillful presentation of a client's defense does not warrant re-
lief under section 473 of the Code of Civil Procedure.

[9] CHATTEL MORTGAGES—REMOVAL OF MORTGAGED PROPERTY—MORT-
GAGE EXISTING BY REASON OF NATURE OF TRANSACTION—INAP-
PLICABILITY OF SECTION 2966, CIVIL CODE.—Section 2966 of the
Civil Code, as it read prior to its amendment by the legislature
in 1923, relating to the removal of mortgaged property from the
county in which it is situated at the time of the mortgage to
some other county, and thus giving the right to take possession
to the mortgagee, is inapplicable where the lien existed only be-
tween the mortgagee and mortgagor by reason of the nature of
the transaction (which consisted of the giving by a borrower
of a bill of sale of an automobile and the execution and de-
livery by the lender of a conditional agreement of sale of said
automobile to the borrower to secure the repayment of the loan)

8.  See 15 R. C. L. 711; 14 Cal. Jur. 1041, 1044.
9.  See 5 Cal. Jur. 93.

and not by reason of the statute relating to the form and manner of executing chattel mortgages. (On denial of rehearing.)

[10] ID. — RESIDENCE OF MORTGAGOR — DESCRIPTION IN INSTRUMENT — SITUS OF. MORTGAGED AUTOMOBILE—SECTION 2966, CIVIL CODE.— Section 2966 of the Civil Code, as it read prior to its amendment by the legislature in 1923, relating to the removal of mortgaged property from the county in which it is situated at the time of the mortgage to some other county, and thus giving the right to take possession to the mortgagee, is inapplicable where the instrument in question describes the home and place of residence of the mortgagor as being in a certain county, and where it appears that the mortgaged automobile, if in another county at the time of the execution of the mortgage, was there only for temporary purposes, and that its *situs* was really in the county where the home of the mortgagor was situated. (On denial of rehearing.)

---

(1) 11 **C. J.**, p. 418, sec. 13.   (2) 11 **C. J.**, p. 451, sec. 69.   (3) 34 **Cyc.**, p. 1538.   (4) 34 **Cyc.**, p. 1536.   (5) 11 **C. J.**, p. 589, sec. 284. (6) 3 **C. J.**, p. 874, sec. 769.   (7) 3 **C. J.**, p. 882, sec. 782.   (8) 34 **C. J.**, p. 312, sec. 530.   (9) 11 **C. J.**, p. 553, sec. 250.   (10) 11 **C. J.**, p. 554, sec. 251.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying motion to set aside judgment. J. E. Woolley, Judge. Judgment reversed in part and affirmed in part; order affirmed.

The facts are stated in the opinion of the court.

J. H. Breckenridge and George G. Graham for Appellant.

C. K. Bonestell, *in pro. per.,* for Respondent.

PLUMMER, J.—Action in claim and delivery for the recovery of a touring automobile and damages for the detention thereof. Plaintiff had judgment for the recovery of the automobile and for the sum of $600 damages. The defendant appeals. The action was originally begun against the appellant herein and Clarence Nuss and George Graham. It was thereafter dismissed as to the defendant Graham and judgment entered only against the corporation.

The respondent makes several preliminary objections to the consideration of this case upon the merits which we think untenable, but are not set forth herein for the reason that they relate simply to the form of notices and dates, in

nowise helpful to the profession and would only extend the length of this opinion. We therefore proceed to a consideration of the case upon its merits.

It appears from the transcript that one F. M. Chrisman, while the owner of the automobile involved in this action, being in need of money, applied to the defendant, Western Automotive Finance Corporation, for a loan of $1,000, and at the same time offering to secure the payment of the same by creating a lien upon an automobile, to wit, a Handley-Knight touring car model 1921, then owned by him. After an examination of the car by one F. Calvert, the general manager of the defendant corporation, Chrisman was informed that if his title to the car was clear the company would advance the sum of $750; that in order to carry out the transaction, it would be necessary for Chrisman to make a bill of sale to the company, and the company would thereupon execute and deliver to Chrisman a conditional contract of sale, the car to remain in possession of said Chrisman, and, as a matter of fact, did remain in the possession of said Chrisman until the occurrences hereinafter to be narrated. In pursuance of this agreement, the said Chrisman on or about the third day of February, 1922, made and delivered a bill of sale in the following form, to wit:

"Bill of Sale

$10.00                                "San Francisco, Feb. 3/22.
                                          City,          Date.

"For value received ———— hereby sell and convey to ———— the following described property, to-wit:

"Make of Car: Handley-Knight Model: 1921 Tour. Type: Touring Motor No. 20621. License No. 587171. Car. No. Ser. 9581, Chassis 3801. Description ———— and I further warrant and guarantee the title of same to be free and clear of all liens and encumbrances.

"Witness: F. B. Calvert.

                                "F. M. Chrisman."

At the same time, and as a part of the same transaction, there was executed and delivered by the defendant, acting through its general manager Calvert, what is called a conditional agreement of sale, whereby the defendant purported to sell the said automobile to the said Chrisman for the

sum of $2,000 upon the following terms, to wit: $1,250 upon the signing of the contract; $750 payable as follows: $125 March 3, 1922; $125 on April 3, 1922; $125 on May 3, 1922; $125 on June 3, 1922; $125 on July 3, 1922, and $125 on August 3, 1922, all deferred payments bearing interest at the rate of one per cent per month.  [1]  The whole transaction, though couched in the form of a bill of sale from Chrisman to the appellant and a conditional agreement of sale from the appellant to Chrisman, was simply a device to secure the repayment of the sum of $750 loaned by the appellant to the said Chrisman.  There was no transfer of possession of the touring car from Chrisman to the appellant at the time of the execution of the bill of sale executed and delivered by him, nor was there any retransfer of possession at the time of the execution of the conditional agreement of sale by the corporation to Chrisman; there was no $1,250 passed from Chrisman to the corporation.  That sum of money was only a fiction to cover up the discrepancy in the price of the car named in the conditional sale.  There is no testimony in the transcript showing that Chrisman received any payment from the Automotive and Finance Corporation at the time of his purported sale to the corporation.

We think the transaction, which we have outlined in brief, comes within the provision of section 2924 of the Civil Code, to wit: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession in which case it is to be deemed a pledge."  The property thereafter was impressed only with a lien, the legal title to the car remained in Chrisman, and the defendant was not entitled to possession unless authorized by the express terms of the mortgage (Civ. Code, sec. 2927).

[2]  The payments falling due on March 3d and April 3d were not made according to the terms of the contract, and some time between April 3d and April 10th the defendant took possession of the car, basing its right to do so under the conditional agreement of sale referred to herein. Was this taking possession of the car wrongful?  Paragraph 6 of the conditional agreement reads as follows:

"In the event the Purchaser fails or neglects to comply with any of the terms, covenants or conditions of this contract or to make any of the several payment provided for herein, when due or in the event that the Purchaser shall become financially involved or insolvent or fail to pay the premium on said insurance on demand, or in case of any unusual or unreasonable depreciation in the value of said personal property, the Seller, at his option and without notice to the Purchaser, may elect to declare the whole purchase price immediately due and payable or the Seller may, without notice to the Purchaser, declare all of the rights of the Purchaser, under this contract, forfeited, and without demand first made, and with or without legal process, immediately take possession of said personal property, wherever found, using all necessary force so to do, and hold the same discharged from further liability under this contract, and the Purchaser waives all claims for damages due to or arising from or connected with any such taking. In the event the Seller elects to take possession of such personal property, all the rights of the Purchaser under this contract shall immediately terminate and all payments theretofore made thereunder shall belong absolutely to the Seller and shall be retained by him as liquidated damages for the breach of this contract, and as compensation for the depreciation in value and for the use of said personal property, and said Purchaser hereby waives and relinquishes all rights to said payments so made. . . . "

In the case of *Blodgett* v. *Rheischild,* 56 Cal. App. 728 [206 Pac. 674], the questions with which we have to deal were taken up and considered at length. In that case the instrument was called a lease, but its terms are identical with the instrument here involved. The transaction there had was for the purpose of securing the repayment of a loan and the instrument called a lease provided as follows: " 'If the lessee defaults in any of the above payments, when due, or breaches any provision of this lease . . . the lessor, at his option, without previous demand or notice, . . . retake possession of said automobile . . . with or without process of law; and all payments theretofore paid hereunder shall thereupon be forfeited to the lessor, and this lease shall thereupon terminate, and all rights of lessee in this contract and said automobile shall thereupon cease and

are hereby waived; . . . or the lessor may declare the whole of the sums then remaining unpaid to be immediately due and payable, and sue therefor.'   The document further provides that if the 'lessee' shall make all payments when due, then he shall have the right to purchase the automobile by paying the 'lessor' one dollar, and thereupon the latter shall execute to the 'lessee' a good and sufficient bill of sale.''

The instrument there, as here, purports to vest the title absolutely in the party loaning the money upon taking possession of the car.   There, as here, the possession of the property was unchanged.   There, as here, the part of the instrument providing for the taking of possession by the creditor was coupled up with and made an indivisible part of the instrument providing for a forfeiture of the rights of the debtor and the cutting off of his equity of redemption. The language of the court in the case from which we are quoting appeals to us as being decisive here.   The court there said: ''We think that the provision in the 'lease' purporting to give to plaintiff the right to take possession of the property upon any default by defendant in the payment of his debt does violence to the doctrine that 'what is once a mortgage is always a mortgage,' and that, therefore, it is wholly nugatory.   The transaction evidenced by the 'lease' and by defendant's bill of sale to plaintiff was but a mortgage.   The two documents were executed for the purpose of securing a debt.   They were given to secure the repayment of the loan that plaintiff made to defendant.   The possession remained in defendant, the owner of the property.   As between the parties, therefore, the transaction was a mortgage. . . . It is an established doctrine that 'what is once a mortgage is always a mortgage'—which means that no agreement in advance to waive the equity of redemption is valid, and that when once it is established that a transaction is impressed with the character of a mortgage the right to redeem will continue until the debt is paid or until the equity of redemption is foreclosed or barred, or duly and sufficiently released.   (Civ. Code, sec. 2889; *Bradbury* v. *Davenport,* 114 Cal. 593 [55 Am. St. Rep. 92, 46 Pac. 1062].) For the same reason it is not competent for the parties to make a conveyance of property, absolute in form, a security for the payment of money by a given day, with the further

agreement that if payment is not made the instrument shall be treated as an absolute sale. If the instrument is a mortgage when delivered, it will so continue until the right of redemption is cut off in some of the modes recognized by law. (*Bearss* v. *Ford,* 108 Ill. 16, 26; 27 Cyc. 975.)''

As said before, a reading of the clause which purports to give the appellant the right to take possession of the automobile is inseparably connected with that portion of the instrument which attempts to cut off the debtor's equity of redemption and must therefore be held void *in toto.* As the debt had not matured at the time of the taking possession by the appellant, it follows that its action was unwarranted under the instrument upon which it relies, and that it became therefore liable for any damage or detriment caused by such action.

After the taking of possession of the touring car by the appellant, Chrisman assigned his interest in the automobile and right of action to the plaintiff C. K. Bonestell. The automobile was taken under the writ issued in this action and delivered to the plaintiff. The possession, as nearly as we can determine from the transcript, was withheld for the period of about 48½ days. The plaintiff in his complaint alleged that the value of the car was the sum of $2,500 and that the car had at all times and would continue to have a value on account of the use to which it might be put of the sum of $25 per day, and upon trial of the action, was allowed the sum of $25 per day for the possible use of said car for the period of forty days, to wit, $1,000. A retrial was granted upon the sole question of damages, and upon a second hearing the plaintiff was allowed compensation for the possible use of the car in the sum of $12.50 per day.

[3] It is contended on the part of appellant that there is no testimony supporting the judgment or warranting any finding on the part of the court of such value. Upon the question of value the transcript discloses the following testimony: ''In my opinion, the reasonable rental value, 8 hours, 100 miles a day, would be $20 a day, which would include a driver. The rate would not be less for an extended period of time. In renting this car at $20 a day, I pay for the oil and gas.''

The witness Johnson testified as follows: ''A machine in reasonably good condition, of the model described by you,

we get with drivers, about $20 a day, not exceeding 100 miles for eight hours. Most of the drivers work on commission. That $20 includes the expense. Drivers get all the way from two to five dollars a day.''

A witness named Cherry testified as follows: ''The kind of car you mention, the reasonable rental value a day, over and above the expense of operating it, would be $25.''

And the witness Kemp testified in these words: ''The reasonable rental value of a car in good condition, of the model described by you, would be $20 or $25 a day, without a driver, but if I rented a car for from thirty to forty days, I would be satisfied with $10 or $12.50 a day.''

This is all the testimony to which our attention has been called to support the finding of the court as to the value of the possible use of the car. The testimony shows that, as a matter of fact, the car was not used.

[4] Section 3359 of the Civil Code provides that ''damages must, in all cases, be reasonable'' and unless the damages allowed are shown to be such as approach actual, usable, or reasonable value of the article to the owner they have no support in this section. In the case of *Mutch* v. *Long Beach Improvement Co.*, 47 Cal. App. 267 [190 Pac. 638], the rule for determining damages in such cases as this is very clearly set forth. It is there said: ''It is the net usable value less the expense of keeping up the property which may be recovered. In determining the value of the use under the above rule, care should be taken not to permit the fixing of an amount out of all proportion to the value of the thing itself.'' In that case the automobile was detained for a period of 86½ weeks. The damages allowed for such detention amounted to the sum of $1,297.50, or $15 per week. In that case the damages were held excessive. In the case at bar the damages allowed for the detention of the car amount to about the sum of $87.50 per week. Thus, if the car had been detained in this case for the same period of time that it was in the Mutch case, the same calculation and allowance would have fixed the damages at $7,568. We give these figures for the purpose of illustrating the disproportion of the allowance to the real damages suffered.

On the part of the defendant one witness testified that if he rented the car for from thirty to forty days he would

"be tickled to death to get $10 or $12 a day." Another witness testified that $10 would be the gross value of the car, which would yield thirty per cent net as profit. It thus appears that there is no testimony showing the net yield or value of the car at any sum approaching $12.50 per day. The testimony on the part of the plaintiff did not show any sum as the net usable value of the car and that on the part of the defendant was by one witness who stated as just said, thirty per cent of the gross value, which would yield about $3 per day. Thus, if applied to the case at bar the car not being used, and the damages being for 48½ days, would entitle the plaintiff to damages in the sum of $145.50. We do not wish to be understood as fixing this sum as the usable value of the car which the plaintiff in this case is entitled to recover, but simply state that the only testimony in the case bearing upon the question of damages, based upon the rule laid down in *Mutch* v. *Long Beach Improvement Co., supra,* which the court was entitled to consider, shows damages only in that sum.

[5] It is further contended on the part of the appellant that the appellant parted with its interest in the automobile after having taken possession thereof under the terms and conditions of the instrument which we have heretofore considered, but, as this taking was wrongful, it cannot escape damages for its action by parting with its alleged title after the commission of the wrongful act complained of. [6] It is further contended that judgment should not have been given in favor of the plaintiff without providing for the payment of the balance due on the loan for the repayment of which the instruments hereinbefore set forth were executed as security. This matter was not tendered to the trial court, was not made an issue in the case, and cannot be considered here. All that was tendered to the trial court was the title of the plaintiff and the amount of damages for the detention of the property during the time that plaintiff was deprived of its use.

Upon the same record the appellant presents its appeal from an order denying its motion to vacate and set aside the judgment hereinbefore referred to, based upon the provisions of section 473 of the Code of Civil Procedure. That motion is based upon the action of the appellant's agent, Clarence

E. Nuss, and the appellant's attorney, George G. Graham. This record shows that Nuss and Graham were apparently endeavoring to get possession of the car and acquire title thereto for the sum of $750; that the said agents of the appellant did not fully disclose to the trial court the true nature of the transactions being had and did not properly set forth the defense of the appellant herein. This motion is based necessarily upon the premise that the conditional agreement of sale was an instrument in legal effect, other than as we have construed it to be. The motion presupposes that the title to the car was at all times in the appellant and that it had a right to take possession thereof at any time after March 3, 1922. [7] This position, as we have shown, being untenable, by reason of the fact that no title to the car was ever vested in the appellant, that the transaction amounted to nothing but a mortgage, it follows that plaintiff's motion, based upon the theory of title and ownership in the company, is not well founded. [8] The mere fact that an attorney does not make a skillful presentation of a client's defense does not warrant relief under section 473 of the Code of Civil Procedure.

The order of the trial court denying the appellant's motion to set aside the judgment is affirmed; the judgment of the trial court as to the possession and right of possession of the car in question is affirmed, but, as to the damages allowed for the detention thereof, it is hereby reversed and the cause remanded for a retrial upon this issue alone. The appellant will have and recover its costs incurred upon this appeal.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 20, 1924.

THE COURT.—Appellant, in its petition for rehearing, calls our attention to section 2966 of the Civil Code, as it read prior to its amendment by the legislature in 1923 (Stats. 1923, p. 140), in relation to the removal of mortgaged property from the county in which it is situated at the time of the mortgage to some other county, and thus giving the right to take possession to the mortgagee, and insists that the tes-

timony shows that the automobile involved in this transaction was removed from San Francisco to the county of Fresno, and the taking of possession by the appellant was consequently lawful. [9] There are two reasons why this contention is untenable. The first is that the instrument in question does not come under the provisions of the law relating to the execution of chattel mortgages in so far as the removal of property is concerned, or the recording of instruments are affected. The lien in this case existed only between the mortgagee and mortgagor by reason of the nature of the transaction, and not by reason of the statute relating to the form and manner of executing chattel mortgages. [10] The second reason is that the instrument in question describes the home and place of residence of the mortgagor as Fresno, in the county of Fresno, and it is evident that the automobile, if in San Francisco at the time of the execution of the mortgage, was there only for temporary purposes, and that its *situs* was really in Fresno, the home of the mortgagor.

The foregoing points are mentioned herein because not called to our attention in the briefs upon which the case was submitted.

The petition for rehearing is denied.