[L. A. No. 20687. In Bank. Jan. 28, 1949.]

H. T. GUERIN et al., Appellants, v. JOHN M. KIRST, Respondent.

Latham & Watkins, Richard W. Lund, James W. McNabb and John G. Evans for Appellants.

- Frank P. Doherty, William R. Gallagher, Frank W. Doherty and James A. Doherty for Respondent.

SPENCE, J.—Plaintiffs brought this action to recover possession of a certain Caterpillar tractor, or its value, together with damages for its detention by defendant, who claimed as an innocent purchaser. The case was tried before a jury, which rejected plaintiffs' demand *in toto* and returned a verdict in favor of defendant. From the judgment accordingly entered and the order denying their motion for judgment notwithstanding the verdict, plaintiffs appeal.

As their principal ground for reversal, plaintiffs challenge the sufficiency of the evidence, particularly as related to the federal Emergency Price Control Act (56 Stats. 23; 50 U.S.C.A. App. § 901 et seq.), to defeat their claim. A review of the record sustains plaintiffs' position on the issues of ownership and consequent possessory rights in the tractor, but various other considerations require further examination of the parties' rights in the trial court.

It appears that plaintiffs as contractors were engaged in a general grading business and in line with that activity, they bought, repaired, used, and sold tractors and kindred equipment. On November 10, 1941, they purchased the tractor in question—No. 1H 7401—from the Oilfields Trucking Company of Bakersfield, and received a bill of sale therefor. Such document was received in evidence without objection. After using the tractor in their business for almost four years, plaintiffs on November 7, 1945, negotiated a transaction with one Vergil Grove whereunder delivery of the tractor "completely equipped" was made to him that day. As evidence of such transfer of possession, Grove wrote by hand a conditional sales agreement, which covered also another secondhand tractor and a carryall, and which was signed by both parties. The total charge for the three items was fixed at $23,500, of which $2,500 was paid then by Grove, and the writing (hereinafter cited as Exhibit A) specified the terms of further payments and the description of the three pieces of equipment as follows:

"11-7-45.

"I Hereby agree to Buy one cat. & unit Serial 7401—to be bought as rent at Terms of $1,000 down and 1,000 each month for 7 months & one payment of $500, one cat & unit & 'A' frame Serial No. 1-H-949

1-H-949

& one R-U- carry all for payment of $1,500 down & 13 payments of $1,000 and one payment of $500, R-U—7747— after Said payments have been made in full Said buyer H-T-& Guerin Bros.' are to furnish me with Bill of Sale to all this Equipment. Interest of defered payments at 8%.

Guerin Bros By H. T. Guerin
Vergil Grove

Signatures
 in person
Received $2,500 11-7-45
 H. T. Guerin"

It was evidently intended by the parties that Exhibit A—listing the aggregate price for tractor No. 1H 7401 at $8,500 and for the other two pieces of equipment at $15,000—should be reduced to typewritten form. After two drafts as prepared in plaintiffs' office had been rejected by Grove, plaintiffs about December 15, 1945, forwarded to him a third document (hereinafter cited as Exhibit B) dated November 7, 1945, entitled "Agreement of Lease of Personal Property (with Option to Buy)," and required that he sign it or return the equipment delivered to him. The pertinent portions of Exhibit B are as follows:

"1. The lessor (Guerin Brothers) hereby agrees to lease to the lessee (Vergil Grove), and the lessee hereby agrees to rent from the lessors all of that certain personal property described as follows:

| Equipment No. | Description |
| --- | --- |
| 17 | CATERPILLAR TRACTOR, SERIAL No. 1H7401 |
| 28 | CATERPILLAR TRACTOR, SERIAL No. 1H 949 |
| 12 | CARRYALL, R. U., SERIAL No. S7747 |

"2. The period of this lease shall be for ten months commencing on the seventh (7th) day of November, 1945, and ending on the seventh (7th) day of August, 1946, and receipt of payments totaling the sum of $3,500.00 is hereby acknowledged to have been received up to December 14, 1945.

"3. The agreed monthly rental shall be the sum of $2,000.00 per month payable monthly in advance, commencing on the seventh (7th) day of November, 1945, and continuing on the seventh (7th) day of each and every succeeding month up to and including the seventh (7th) day of July, 1946, and the balance of $1,075.00 shall be paid on the seventh (7th) day of August, 1946, and the total rentals for said period shall be the sum of $19,075.00.

"4. The lessor hereby grants to the lessee the option to purchase said equipment at the expiration of said rental period for a price of $4,425.00 provided that the lessee shall give notice in writing of his intention to exercise said option and which notice must be given to the lessor on or before the seventh (7th) day of August, 1946, and provided further that the lessee's right to so purchase said equipment shall be conditional upon a complete and full performance of his undertakings as herein provided, and also conditional upon the full payment by him to lessor of the rental herein above provided.

"5. That should lessee exercise said option to purchase said personal property, he shall pay to lessor, in addition to the other sums herein provided, interest at the rate of eight (8) per cent per annum on the sum of $21,000.00 from the seventh (7th) day of November, 1945, to and including the seventh (7th) day of August, 1946, on the basis of the monthly deferred balances, and provided further that in the event of such election, lessee will pay to lessor the amount of repairs and maintenance incurred or paid by lessor in connection with said personal property during the term of this lease.

"6. Payments shall be made to the lessors at their office at 208 South Linden Avenue, South San Francisco, California.''

Grove signed this latter document and made payments in connection with the transaction in the total amount of $5,500, the last under date of January 23, 1946. To be noted with respect to these two agreements bearing the same date are these parallel considerations: both relate to identical equipment; both call for aggregate payments of $23,500; both specify monthly payments in the amount of $2,000; both stipulate interest at 8 per cent on deferred payments; and both provide that Grove should own itemized machinery upon fulfillment of the agreed terms.

On or about January 21, 1946, John M. Kirst, defendant, negotiated the purchase of a new and distinct Caterpillar tractor from Grove for $8,300. The next day he paid that amount to Grove and received a bill of sale covering the transaction, with the understanding that delivery was to be made within 10 days. Apparently Grove could not obtain the new tractor for defendant as scheduled and pending its availability, Grove on February 22, 1946, delivered to defendant on a loan basis plaintiffs' tractor No. 1H 7401—the one here involved in suit. Finally about March 5, 1946, with Grove still unable to fulfill his delivery undertaking on the new tractor, defendant and Grove agreed that defendant would keep plaintiffs' tractor No. 1H 7401 for the price of $6,000 and there would be a $2,300 refund. The latter sum, however, was never repaid to defendant. Plaintiffs had no part in these dealings between Grove and defendant, nor had a bill of sale covering their tractor No. 1H 7401 following their acquisition of it on November 10, 1941, as above noted, ever been made—either by plaintiffs in favor of Grove or by Grove in favor of defendant. Grove had entered into several

other contract agreements with plaintiffs relative to the purchase of equipment, and of the aforementioned $8,300 he received from defendant, he forwarded $6,200 to plaintiffs for application on his general account with them. Within the exercise of their discretion, plaintiffs credited this sum in proportionate amounts to four of their outstanding contracts with Grove, but not including the agreement covering the tractor here in question. The propriety of such distribution of the moneys as subsequently itemized in correspondence with Grove is in nowise disputed.

On June 10, 1946, plaintiffs located their tractor No. 1H 7401 in defendant's possession. Plaintiffs thereupon demanded delivery of the tractor but defendant refused to surrender possession. Defendant had been using the tractor in good faith in his business, with the belief that he had purchased from Grove machinery which the latter owned and had the right to sell, and without knowledge of any interest of plaintiffs therein. Plaintiffs instituted this action on July 5, 1946. Under the evidence adduced at the trial, the tractor was valued at $6,000 or $7,000; and defendant in his answer admitted its reasonable rental value was $825 per month—a figure he likewise stipulated in open court to be correct.

The foregoing review of the record on the issue of ownership between the parties establishes that plaintiffs, whether viewed as conditional vendors or lessors, were entitled to judgment for "possession" of tractor No. 1H 7401 "or the value thereof," in lieu of its return, "and damages for the detention." (Code Civ. Proc., § 667.) Plaintiffs did no act which was calculated to lead a reasonable person to believe that Grove was the absolute owner of such tractor. Although defendant apparently relied on Grove's representation that he had complete power of disposition over the tractor that was in his possession, and accordingly paid Grove full value therefor in the belief that he was acquiring absolute title to the property, such circumstances cannot avail defendant against plaintiffs asserting their rights as the true owners, subject to the qualifications hereinafter mentioned. Grove was in the position of a mere possessor and he could not convey title, however innocent his vendee. (*Oakland Bank of Savings* v. *California Pressed Brick Co.*, 183 Cal. 295, 297 [191 P. 524]; *Pacific Finance Corp.* v. *Hendley*, 103 Cal.App. 335, 338 [284 P. 736].)

 Nor in dispute of plaintiffs' possessory right to tractor No. 1H 7401 does it aid defendant to challenge the legality of plaintiffs' dealings with Grove upon the ground that the successive agreements—Exhibits A and B—when construed together, constituted a contract of conditional sale and, as such, are void because violative of the "Emergency Price Control Act of 1942, as amended [56 Stats. 23, 50 U.S.C.A. App. § 901 et seq.], and the Rules and Regulations issued pursuant thereto." Defendant apparently takes such position with the object (a) of overcoming plaintiffs' claim that the meaning and purpose of Exhibit B was to make a lease out of the transaction instead of a contract of sale, and (b) of then maintaining (1) that as vendee in possession and not in default Grove could with impunity "sell his interest" to defendant, and (2) that the latter could establish by parol that plaintiffs' object was to evade the federal statute by wording the agreement in terms of a lease. Preliminarily, it should be said that in his negotiations with defendant, Grove did not purport to convey "his interest" in the tractor to defendant but rather undertook to transfer full and absolute title thereto. But aside from that point, defendant cannot thus dispose of Exhibit B in the absence of appropriate pleading and proof. All of the conversations preceding the execution of Exhibit A were merged in that document, and all conversations and preliminary writings relative to the sale or lease of tractor No. 1H 7401 prior to the execution of Exhibit B were merged in that instrument. Exhibit B became the "final memorial" of the understanding of the parties; and consequently no testimony that would vary its provisions was competent, and no evidence of the terms of the agreement other than its own contents was admissible in the absence of a "mistake or imperfection . . . put in issue by the pleadings." (Code Civ. Proc., § 1856; *Estate of Gaines,* 15 Cal.2d 255, 264-265 [100 P.2d 1055]; *Nourse* v. *Kovacevich,* 42 Cal. App.2d 769, 771-772 [109 P.2d 999]; *Mulrooney* v. *Pietro,* 79 Cal.App.2d 311, 314 [180 P.2d 62].) Moreover, in further consideration of this premise of defendant's attack, it is significant that plaintiffs did not rely upon their agreements with Grove to establish their right to recover possession of the tractor, but upon their prior untainted legal title thereto. (*Cf., Holm* v. *Bramwell,* 20 Cal.App.2d 332, 336 [67 P.2d 114]; *Asher* v. *Johnson,* 26 Cal.App.2d 403, 409-411 [79 P.2d 457].) Accordingly, on this phase of the case it was wholly immaterial that defendant introduced evidence for the purpose

of showing (1) that plaintiffs sold their tractor No. 1H 7401 to Grove for $8,500; (2) that the maximum price to be charged for such used tractor not rebuilt and guaranteed was 55 per cent of its "base price"—that is, the price f.o.b. the manufacturer's plant—(Maximum Price Regulations, No. 136 of the United States Office of Price Administration, § 12 [c] [e]) ; and (3) that the base price of tractor No. 1H 7401 was $10,411.86, so that 55 per cent thereof would be $5,726.52. Plaintiffs were not trying to enforce any agreement they had with Grove with respect to the tractor in question, and their violation of the federal statute or of the regulations issued pursuant thereto would give defendant no rights in. contravention of plaintiffs' possessory claim as owners of the property.

■ However, the legality of plaintiffs' dealings with Grove are material in the equitable disposition of this controversy under the doctrine of *Martin* v. *Hollins,* 118 Cal.App. 561 [5 P.2d 899], permitting an innocent purchaser to retain property bought from the conditional vendee upon paying the balance due the conditional vendor under the terms of the contract. Such regard for the parties' respective positions avoids undue enrichment of the conditional vendor through receipt of an amount in excess of what he might have obtained from his vendee and at the same time prevents unnecessary hardship upon the innocent purchaser, who,' after having paid full value to his transferor, would otherwise be compelled to deliver up the property or pay full value over again to the conditional vendor. (*Cf., U. S. Machinery Co.* v. *International Metals Development, Inc.,* 74 Cal.App.2d 5, 14 [168 P.2d 37].) The same premise of equitable adjustment should prevail where a "lease with option to buy," rather than a conditional sales agreement, is involved, so that "the owner receives the [consideration] agreed upon together with interest and the innocent purchaser is penalized only to the extent necessary to fairly compensate the owner. The law has always endeavored to protect the rights of the innocent purchaser for value and such protection should readily be extended to those cases where no injustice is done to others." (*Martin* v. *Hollins, supra,* 118 Cal.App. 561, 565.)

■ Under the above record the value of the three pieces of equipment—two tractors and one carryall—which plaintiffs transferred to Grove pursuant to their successive agreements —Exhibits A and B—was $23,500. It is conceded that the sale of such used or "second-hand" equipment was subject

to the federal price regulations, with the "maximum price" for a "rebuilt," "tested" and "guaranteed product" fixed at "85 per cent" of the new "base price," but if not so qualifying, then the "maximum price" should be only "55 per cent" of the new "base price." (Maximum Price Regulations, No. 136 of the United States Office of Price Administration, § 12 [b] (2), [c].) Accepting the "base price" listing stipulated by the parties as here applicable, the following table of computation is pertinent under the federal regulations:

| | Base Price | 85% of Base Price | 55% of Base Price |
|---|---|---|---|
| Tractor No. 1H 7401 | $10,411.86 | $8,850.08 | $5,726.52 |
| Second Tractor No. 1H 949 | $10,411.86 | $8,850.08 | $5,726.52 |
| Carryall | $11,958.30 | $10,164.56 | $6,577.07 |
| | | $27,864.72 | $17,030.11 |

From these figures it is clear that plaintiffs' sale of the three pieces of equipment for $23,500 would be within the legal limitation only if they were "rebuilt" and "guaranteed," and "the seller must so certify to the buyer on the invoice." (Maximum Price Regulations, No. 136, *supra,* § 12 [b] (iv).) The significance of these considerations with respect to the purport of Exhibit B as executed by plaintiffs and Grove in the form of a lease with option to buy is the express provision of the regulation—effective at the time of plaintiffs' delivery of the equipment to Grove on November 7, 1945—that the federal "price limitations . . . shall not be evaded whether by direct or indirect methods, in connection with an . . . agreement, sale, delivery, purchase, *lease of* or relating to commodities covered" thereby, and among the "specific practices prohibited" was *"renting or leasing a new or second-hand product with an option to purchase, when the sum of the rental and the sale price exceeds the [established] maximum price."* (Maximum Price Regulations, No. 136, *supra,* as revised March 26, 1945; § 26[a] [b] (8); emphasis added.) Defendant thus maintains that the validity of plaintiffs' total price listings for the three pieces of equipment under Exhibit B would have to conform with the limitations of the regulation and would require a written certificate by plaintiffs warranting such equipment to be "rebuilt" and "guaranteed" so as to permit a charge exceeding 55 per cent, but not more than 85 per cent, of the base price. (See *Mechanical Farm Equipment Distributors, Inc.* v. *Porter,* 156

F.2d 296, 298-299.) No such certification now appears in the record in derogation of the charge of illegality and evasion of the federal price regulations, as presented by defendant, upon establishment of the legal base prices operative for the equipment and introduction in evidence of plaintiffs' successive agreements with Grove—Exhibits A and B—neither of which mentioned a "guaranty" covering the equipment nor purported to be accompanied by any other document containing the required warranty. Such evidentiary matter is material to the affirmance of the legality of plaintiffs' price listings in the event of the exercise of the "option to buy" under Exhibit B (10 Cal.Jur. §§ 88-89, pp. 782-784), for defendant would not be liable to pay more for tractor No. 1H 7401 than plaintiffs could lawfully charge under the effective price controls at the time of their agreements with Grove. Accordingly upon the retrial of this action, the proper price limitations will depend on the parties' showing in regard thereto. If it should appear that the equipment was "rebuilt" and "guaranteed," and was so certified so as to qualify within the higher price allowance for "second-hand products," then within that limitation the parties should agree or introduce evidence establishing what proportion of the $23,500 total sum covering the three items subject of exhibit B is properly assignable to tractor No. 1H 7401 for valuation. (*Field* v. *Austin,* 131 Cal. 379, 383-384 [63 P. 692].)

Other matters must also be considered in connection with the accounting adjustment between the parties on this phase of the case. ■ First there is the payment of $5,500 which Grove indisputedly made to plaintiffs on Exhibit B. Defendant urges that he, in assuming Grove's obligations on the agreement, should receive credit for the whole of such sum in the determination of the balance of the purchase price owing on tractor No. 1H 7401. But such contention ignores the fact that the $5,500 payment applied to the *three* pieces of equipment covered by Exhibit B, and consequently only a proportionate distribution of that sum would be proper as an allowance to defendant consistent with the evidence relative to this point adduced on the retrial of this action. ■ Likewise to be mentioned here is the effect of Grove's payment of $6,200 to plaintiffs from the $8,300 which he received from defendant on January 22, 1946, pursuant to the latter's purchase of the new tractor, which Grove undertook to deliver to defendant and for which tractor No. 1H 7401 was later substituted at a valuation of $6,000, plus a $2,300 refund

as above related. Defendant argues that since plaintiffs were enriched to the extent of $6,200 by reason of money paid by him, he should have credit therefor in the balance of accounts. But significantly, such $8,300 payment as initially negotiated between Grove and defendant had nothing to do with tractor No. 1H 7401 here involved, and the $6,200 thereof later paid by Grove to plaintiffs from his commingled funds was applied by them, in the exercise of their judgment, not to Grove's obligations under Exhibit B but to other outstanding accounts they had with him. (Civ. Code, § 1479.) Accordingly, the testimony relating to these independent dealings was material only to the establishment of defendant's status in proceeding in good faith with the purchase of the tractor, but it could not affect the settlement of the accounting issues of this case, and plaintiffs' objections within the bounds of this limitation were well taken.

There now remains the matter of plaintiffs' right to damages for defendant's detention of tractor No. 1H 7401 following their demand on him for its return on June 10, 1946. ■ In a replevin action the owner may recover the value of the use of his property where the amount thereof exceeds the interest on such value, inasmuch as the latter measure does not furnish adequate compensation for the wrongful detention. (*Drinkhouse v. Van Ness*, 202 Cal. 359, 379 [260 P. 869]; *Tucker* v. *Hagerty*, 37 Cal.App. 789, 792 [174 P. 908].) However, in computing such damages it is only the "net usable value less the expense of keeping up the property" which can be recovered by the aggrieved party. (*Mutch* v. *Long Beach Improvement Co.*, 47 Cal.App. 267, 269 [190 P. 638]; see, also, *Bonestell* v. *Western Automotive Finance Corp.*, 69 Cal.App. 719, 727 [232 P. 734]; *Booth* v. *People's Finance & Thrift Co. of Modesto*, 124 Cal.App. 131, 138-139 [12 P.2d 50].) Defendant admitted in his pleading and likewise stipulated in open court that the reasonable rental value of tractor No. 1H 7401 was $825 per month. But, as defendant urges in relation to this item of recovery, there is the further matter of repairs made and expenses incurred by him for upkeep of the tractor. ■ During the course of the trial defendant made an offer of proof that the cost of overhauling the tractor at the time of his purchase from Grove and prior to his knowledge of plaintiffs' claim was $2,169.82. Such evidence was improperly excluded. (*Mutch* v. *Long Beach Improvement Co., supra*, 47 Cal.App. 267, 269.) ■ Likewise defendant should be permitted to show whatever expenditures he made

with regard to the tractor after plaintiffs' assertion of their claim thereto and pending the disposition of this controversy, during which time defendant admittedly has been using the tractor in his buisness. ▮ In addition, appropriate allowance should be made for the decline in rental value of the tractor over the years—perhaps to the vanishing point—consistent with the normal deterioration of a piece of machinery in the measure of its condition for the continued performance of effective work. It is only upon the basis of all these considerations that plaintiffs will be fairly compensated in a "reasonable" amount for defendant's use of their tractor, and defendant will not be subject to "unconscionable and grossly oppressive damages, contrary to substantial justice." (Civ. Code, § 3359.) ·

▮ Plaintiffs argue that they should be allowed damages for the detention of the tractor computed on a flat rate of $825 per month—without regard for any repair expenditures made by defendant while it was in his possession or for any decline in rental value as would manifestly operate to reduce the monthly return properly assessable on equipment being subjected to continued use—and on such basis the item would run "from November 7, 1945 to date" at $9,900 per year. Obviously such damage claim is grossly excessive and disproportionate when correlated with the value of the tractor— $6,000, according to plaintiffs' own figures, "if it cannot be returned." While section 667 of the Code of Civil Procedure provides for "damages for the detention" of "personal property" as an item of appropriate recovery, it does not undertake to set out a formula for the determination of the amount thereof. ▮ However, "damages must, in all cases, be reasonable" (Civ. Code, § 3359), and this command of the law is controlling in every instance pursuant to the settled rule that all related provisions of the codes must be read and construed together, and that effect must be given to every section. The mere recital of plaintiffs' exorbitant demand demonstrates their position to be one wholly irreconcilable with the question of "reasonableness" as an essential condition which enters into "all cases" of damage recovery—and the impropriety of such excessive relief need not be further discussed.

From what has been said, it follows that the judgment must be reversed. On the other hand, it appears that plaintiffs' motion for judgment notwithstanding the verdict was properly denied, as the trial court could not have entered

such judgment in favor of plaintiffs without a determination of the several issues of fact above discussed.

The order denying plaintiffs' motion for judgment notwithstanding the verdict is affirmed. The judgment is reversed and the cause is remanded for a retrial in accordance with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.