[Civ. No. 23784. Second Dist., Div. Two. June 23, 1960.]

FRAN-WELL HEATER COMPANY (a Corporation), Respondent, v. C. RAY ROBINSON, Appellant.

126

C. Ray Robinson, in pro. per., and William B. Boone for Appellant.

Robert E. Snyder and Ernest V. Shockley for Respondent.

FOX, P. J.—Plaintiff brought this action to recover possession of certain personal property, or the value thereof, together with damages for its wrongful detention. Defendant Robinson has appealed from an adverse judgment.

Robinson owned an oil lease, known as the Ripley oil lease, on property in Kern County upon which there were three wells. In 1954 he leased two complete heating units, consisting of both surface and subsurface equipment, from plaintiff. This equipment was installed in wells 1 and 2 on said lease. The rental initially was at the rate of $250 per month. Later, the surface equipment was removed by plaintiff. The rent was then lowered to $100 per month per well for the remaining subsurface units. This action involves only the subsurface equipment.

In the fall of 1955, defendant Spur Oil Company[1] purchased the Ripley oil lease from Robinson, who executed a general bill of sale covering the lease and certain equipment. No inventory of equipment, however, was provided. These heaters, which plaintiff had leased to Robinson, were in the holes of wells 1 and 2 of the Ripley lease when it was sold and transferred to Spur Oil Company by Robinson. Spur Oil Company continued to use the heaters in these wells.

In September, 1956, plaintiff brought an action denominated "claim and delivery"[2] against Robinson, McAteer and Spur Oil Company to recover possession of these heaters, or the value thereof in case delivery could not be had, together with damages for the wrongful detention thereof. The court rendered judgment in plaintiff's favor and against Robinson for the possession of said equipment and upon the failure to deliver same within 10 days, then for its value in the sum of $1,679.26, and damages for detention from October 1, 1955, to date of trial, April 24, 1958, at the rate of $200 per month, a total of $5,160. It is from this judgment that Robinson has appealed. The court found in favor of defendants McAteer and Spur Oil Company.

At the commencement of the trial the following transpired:

"MR. SNYDER (Attorney for Plaintiff): The plaintiff and both the defendants are prepared to stipulate that the plaintiff is the owner of the equipment set forth in the plaintiff's complaint, and entitled to his [sic] possession of the equipment or the reasonable value which we set at $1679.26.

"MR. LEE (Attorney for McAteer and Spur Oil Co.): So stipulated.

"MR. LUDLOW (Attorney for Robinson): So stipulated."

 Notwithstanding this stipulation, Robinson at the outset argues that plaintiff cannot maintain this suit against him because plaintiff did not prove a demand upon him for the return of the heaters. There is no merit in this argument. This stipulation implies the existence of every element essential to the conclusion that the plaintiff is the owner of the equipment and entitled to its possession. Thus, if demand for possession (or proof of facts showing that a demand would have been futile) was essential to the conclusion that plaintiff was then entitled to possession of the heaters, under the stipu-

---

[1]The Spur Oil Company is a limited partnership in which Frank McAteer is a general partner. McAteer is also a defendant both individually and as a general partner in the Spur Oil Company.

[2]Plaintiff did not seek to have the heaters returned to it immediately under the provisions of Code of Civil Procedure, section 509 et seq.

lation, the existence of such fact was conceded by defendants and no proof thereof was required. The case appears to have been tried upon this theory, for there is no suggestion in the record that plaintiff was called upon to prove that a demand had been made for the return of the heaters. In view of the stipulation, the theory upon which the case was tried, and the failure to raise the point during the trial, Robinson is not in a position to raise it on appeal. ▮▮ The applicable principle is stated in *Grimes* v. *Nicholson*, 71 Cal.App.2d 538 [162 P.2d 934]. At page 543, this court stated: "If a case is tried, submitted, and decided on a certain theory, a party will not be permitted to raise for the first time on appeal an objection that could have been obviated if it had been made in the court below." ▮▮ Furthermore, "when a case is tried upon the theory that certain facts exist, even though they are put in issue by the pleadings, their existence will be assumed on appeal." (*Goss* v. *Fanoe*, 114 Cal.App.2d 819, 826 [251 P.2d 337]; *Handy* v. *Fitschen*, 9 Cal.App.2d 637, 640 [50 P.2d 1059].)

▮▮ Robinson further contends that no valid judgment "in claim and delivery" could be rendered against him since the pleadings and evidence clearly establish that he was not in possession of the heaters at the time the suit was filed. This contention states what is undoubtedly the general rule. (*Riciotto* v. *Clement*, 94 Cal. 105 [29 P. 414]; *Stockton M.P. Co.* v. *Mariposa County*, 99 Cal.App.2d 210 [221 P.2d 232].) However, there is an exception to this general rule. This exception is stated and explained in *Faulkner* v. *First National Bank*, 130 Cal. 258 [62 P. 463]. At page 263 the court said: "Now it is contended by appellant that the judgment was erroneous, because what appellant calls 'an action of claim and delivery' cannot be maintained where the defendant is not in possession of the property sued for at the time of the commencement of the action.

▮▮ "Courts and law-writers have sometimes inadvertently spoken of the code 'action of claim and delivery' as if there were really here a form of action called by that name— just as there were forms of action at common law, such as 'debt,' 'covenant,' 'replevin,' 'trover,' etc. But we have here no forms of civil actions. We have only one form of action, which has no name; so that an action cannot be here defeated, as it could have been at common law, because not properly named. ▮▮ Sections 509 to 520 of the Code of Civil Procedure are preceded by the heading 'claim and delivery of per-

sonal property,' but the sections themselves show the meaning of this heading. They merely provide an auxiliary remedy by which, when a party brings an action to recover personal property, he may 'claim' that the property be immediately delivered to him at the commencement of the action and without waiting the trial." On page 264, the court pointed out that the cause of action was based on a "contract of bailment"; that the original possession was lawful but the detention was wrongful. ■■■ The court then stated: "Now that is just the kind of wrong for which at common law the action of detinue was especially appropriate, and the averments in the complaint in the case at bar are substantially those required in such action. (Citations.) While we have no forms of action here, yet when the averments of facts in a complaint show the case to be one for which a particular form of action would have been a proper one at common law, then the general principles of pleading and practice apply to it which apply to the special form of common-law action. Now, it was no defense to the action of detinue to plead that the defendant, before the commencement of the action, had wrongfully disposed of the property, and, therefore, was not in possession of it." On page 265 the court quoted with approval from *Rucker* v. *Hamilton*, 3 Dana 36, as follows: "As the object of detinue against a bailee is to recover the specific thing bailed, and enforce a specific execution of the contract of bailment, the fact that the bailee had wrongfully parted with the possession before the impetration of the writ should not, *per se*, defeat the action. Neither justice nor analogy would suffer such an invasion of law and frustration of contract. . . . The wrongful delivery by a bailee is any delivery to another in violation of his contract, or in consequence of which he cannot make specific restitution to the bailor. He is, of course, liable if he authorize or permit another to possess and detain the thing bailed." After reviewing a number of other authorities, the court then stated (p. 266): "The principles declared in the foregoing authorities are eminently just, and are founded on the maxim that no one can take advantage of his own wrong; and they are as applicable now to an action based on a contract of bailment as they were to such an action when it had to be brought under the special form of detinue."

The foregoing principles of the Faulkner case were applied in *Teter* v. *Thompson*, 57 Cal.App. 329 [207 P. 260], in reversing a judgment in favor of the defendant in an action to recover a truck or, in the alternative, its value, where defendant

had transferred the truck to a third person and did not have possession of it at the time the action was filed.

In *New Liverpool etc. Co.* v. *Western etc. Co.*, 151 Cal. 479 [91 P. 152], these principles were again reiterated and applied. It appeared there that defendant was in possession of a quantity of salt as bailee; that prior to the commencement of the action plaintiff had become entitled to possession upon demand which was made by plaintiff and delivery of possession was refused by defendant. Suit was then brought to recover possession of the property or, in the alternative, its value. Defendant in the meantime had parted with possession of the salt. The court, however, held (p. 483) : ''The fact that the defendant had, before the demand, or before the action was begun, parted with the possession of the salt, was no defense.'' The court further stated (p. 484), ''if a bailee wrongfully deliver the goods to another, he will continue liable in detinue for the goods or their value; that it does not lie in his mouth to set up his wrongful act in answer to such action, or to say that he is unable to comply with the demand for possession because of his own breach of duty; and that the burden is on him to show any excuse, such as that his possession ceased before suit brought, by accident or some means beyond his control and without his fault.''

 Applying these principles to the factual situation at bar it is clear there is no merit in Robinson's contention. He came into possession of the heaters through his lease-rental agreement with plaintiff. As a result of that agreement he was under certain contractual duties (the nature of which need not here be discussed) to plaintiff. When Robinson sold the oil lease and delivered possession of the wells to Spur Oil Company the heaters were in the bottom of the oil wells and were turned over to Spur as an integral part of the wells.[3] By the terms of the stipulation, plaintiff was still the owner of the heaters and entitled to their possession at the time of trial. As pointed out in the New Liverpool case, *supra* (p. 484), if Robinson improperly delivered the heaters to Spur he continued liable for them or their value for ''it does not lie in his mouth to set up his wrongful act in answer to such action, or to say that he is unable to comply with the demand for possession because of his own breach of duty; and . . . the burden is on him to show any excuse, such as that his possession ceased before suit brought, by accident or some other

---

[3]Just what the transaction was between Robinson and Spur Oil Company with respect to these heaters was not made clear in the trial court.

means beyond his control and without his fault.'' If, on the other hand, the lease-rental agreement between plaintiff and Robinson were assignable (see *Peiser* v. *Mettler,* 50 Cal.2d 594, 602 [328 P.2d 953]) and was in fact assigned by the latter to Spur (which, however, is not established) this alone would not serve to release Robinson from his obligations under the contract (*Peiser* v. *Mettler, supra,* p. 602, and cases there cited). It is therefore apparent that Robinson could not relieve himself from liability in connection with these heaters by the simple expedient of turning possession over to Spur Oil Company, even before the present suit was filed.

▪ Robinson mistakenly argues that the judgment in favor of defendants McAteer and Spur Oil Company is prejudicially erroneous as to him. Robinson is liable for the damages caused by his acts. This liability is separate from and independent of any liability that the other defendants may have incurred. Even if the judgment as to the other defendants is erroneous it cannot affect the judgment against Robinson. (*Johnson* v. *Hulse,* 83 Cal.App. 111, 118-119 [256 P. 551]; *Click* v. *Southern Pac. Co.,* 113 Cal.App. 528, 529 [298 P. 839]; *Richman* v. *Green,* 143 Cal.App.2d 470, 472 [299 P.2d 890].)

### DAMAGES

Robinson urges that the trial court applied an erroneous theory in fixing the measure of damages for wrongful detention, and also that the damages awarded are excessive as a matter of law. Robinson is correct in these contentions.

The trial court fixed the damages for wrongful detention at $200 per month for the period from October, 1955, to date of trial (April 24, 1958). This allowance was commensurate with the usual rental charge made by Fran-Well and also represented the monthly rentals paid by Robinson prior to October, 1955. ▪ However, assessment of damages for wrongful detention at a flat rate based solely upon the gross rental value of a chattel is erroneous as a matter of law. As stated in *Mutch* v. *Long Beach Improvement Co.,* 47 Cal.App. 267, at 268 [190 P. 638] : ''. . . one thus deprived of the use of an automobile cannot recover the gross rental value of a fully equipped and maintained car, free from all expense of maintenance, repairs, and natural wear and tear, such as a rented car would naturally be subject to.'' (See also *Bonestell* v. *Western Automotive F. Corp.,* 69 Cal.App. 719, 728 [232 P. 734], and *Booth* v. *Peoples Finance etc. Co.,* 124 Cal.App. 131, 138, 141, 142 [12 P.2d 50].) ▪ The correct measure

of damages under these circumstances is stated in *Guerin* v.
*Kirst,* 33 Cal.2d 402, 414 [202 P.2d 10, 7 A.L.R.2d 922]:
". . . in computing such damages it is only the 'net usable
value less the expense of keeping up the property' which can
be recovered by the aggrieved party." (Citations.) The "net
usable value" is determined by "appropriate allowance . . .
for the decline in rental value . . . over the years—perhaps
to the vanishing point—consistent with the normal deteriora-
tion of a piece of machinery [as] the measure of its condition
for the continued performance of effective work." (*Guerin*
v. *Kirst, supra,* p. 415.)

No pleading or proof of these considerations was made or
offered by Fran-Well. The only evidence in the record is
Sanchez' testimony that $200 was a reasonable monthly rental
and that Fran-Well maintains and services the equipment it
leases, this latter factor being an element in the total rental
charge. No attempt was made to fix the "net usable value"
of the heaters. It therefore appears that there was no proper
evidence to support the judgment for damages for wrongful
detention. (*Booth* v. *Peoples Finance etc. Co.,* 124 Cal.App.
131, 138, 141, 142 [12 P.2d 50]; *Mutch* v. *Long Beach Imp.
Co., supra.*)

Furthermore, the award of damages for wrongful
detention is excessive as a matter of law. The total value of
the property was stipulated to be $1,679.26, yet the judgment
awards Fran-Well $2,400 for each year of detention, so that
the total allowance for damages is more than three times the
value of the equipment. The case of *Guerin* v. *Kirst, supra,*
is apposite. There the damage claim (value of chattel was
$6,600 and claim was for $9,900 per year) was in nearly the
same proportion as in this case. The rental value of the
chattel was stipulated to by the defendant. Nevertheless, the
Supreme Court held, at page 415: "Obviously such damage
claim is grossly excessive and disproportionate when corre-
lated with the value of the tractor. . . . The mere recital of
plaintiffs' exorbitant demand demonstrates their position to
be one wholly irreconcilable with the question of 'reasonable-
ness' as an essential condition which enters into 'all cases' of
damage recovery—and the impropriety of such excessive re-
lief need not be further discussed." (See also Civ. Code,
§ 3359; *Mutch* v. *Long Beach Imp. Co., supra,* at pp. 268, 269.)

The judgment is reversed.

Ashburn, J., concurred.